**BROOK VILLAGE NORTH ASSOCI-ATES, et al., Plaintiffs-Appellants,**

v.

**GENERAL ELECTRIC COMPANY, Re-Entry and Environmental Systems Division, Defendant-Appellee.**

No. 81–1333.

United States Court of Appeals, First Circuit.

Argued June 8, 1982.

Decided Aug. 20, 1982.

J. Bradford Westgate, Nashua, N. H., with whom Winer, Pillsbury & Bennett, Nashua, N. H., was on brief, for plaintiffs-appellants.

Gerald R. Prunier, Nashua, N. H., with whom Prunier, Mazerolle & Frasca, Nashua, N. H., was on brief, for defendant-appellee.

Before COFFIN, Chief Judge, BOWNES, Circuit Judge, ROSENN, Senior Circuit Judge.*

ROSENN, Circuit Judge.

The primary question on appeal in this diversity suit is the effect to be given admissions that are deemed to be made under Rule 36 of the Federal Rules of Civil Procedure because of a party's failure timely to respond to a request therefor, and the limits, if any, on the discretion of a trial judge to permit withdrawal of an admission once trial has commenced. We must also decide whether plaintiffs are entitled to prejudgment interest.

The plaintiffs, Brook Village North Associates ("Brook Village") and First Equity Associates, Inc. ("First Equity"), instituted suit in the United States District Court for the District of New Hampshire, to recover damages for breach of contract in the purchase of modular housing. After a bench trial, the trial judge declined to give conclusive effect to pretrial admissions of the defendant, General Electric Co., Re-Entry and Environmental Systems Division ("GE") under Rule 36, although the admissions had not been amended or withdrawn as proof of damages. Instead, the court awarded plaintiffs a lower sum based on evidence produced by the defendant at trial. The court also refused to award prejudgment interest. The plaintiffs appeal from the judgment awarding them $149,328.69. We reverse in part and remand.

I.

In partial fulfillment of its mandate to see that adequate housing is available to all Americans, the Department of Housing and Urban Development established a program entitled "Operation Breakthrough" to encourage mass-produced low and moderate income housing. On or about October 1, 1971, as part of this program First Equity entered into an agreement as contractor with GE under which GE agreed to supply 160 units of factory-produced modular housing, for erection into apartments in Nashua, New Hampshire, under the sponsorship of Brook Village.[1]

The modules, consisting of flat roofs and fabricated rooms complete with interior fixtures, were manufactured by GE in King of Prussia, Pennsylvania, and delivered to New Hampshire in early 1972. First Equity, employing its own crew, installed cement foundations and erected the modules according to GE's specifications.

Shortly after erection began, serious leaks developed in the flat roofs. By May of 1972 it became apparent that the roofs manufactured by GE were unsatisfactory and would not be able to withstand the elements. GE therefore arranged, at its sole cost, with a New Hampshire roofing company to install a "built-up" roof covering the entire complex. This was completed in the latter half of 1972. In 1973 further roof leaks developed, which were initially repaired at GE's expense. In July of 1973, however, GE refused to fund any further roof repairs. Plaintiffs were required to hire contractors to perform additional roof repairs and eventually, to forestall further leaks, to install pumps on the roof to remove water which "ponded."

Problems also developed when the front facia sheets on the doors and drawers of the kitchen cabinets furnished by GE began delaminating. In an effort to solve this problem, GE furnished plaintiffs with handles to be placed on all of the cabinets to correct the problem and prevent further delamination. Plaintiffs maintain that because the delamination was widespread and not confined to the doors, the handles were not used. Eventually, they were lost.

Plaintiffs brought suit in December 1975 under warranty and tort theories to recover damages for the defective roofing and cabinets. With respect to both problems, plaintiffs claimed that replacement of the offending structures was the only adequate solution. On October 31, 1977, they filed

---

* Of the Third Circuit, sitting by designation.

1. The principals of Brook Village and First Equity appear to be the same individuals.

their first requests for admissions, seeking to establish the genuineness of certain documents and letters and the truth of statements contained therein pertaining to liability and damages. After a period of more than nine months, on August 3, 1978, GE filed its reply to the requests for admissions. Brook Village immediately moved to strike GE's reply for untimeliness and the district court granted the motion. GE moved twice before trial as well as on the first day of trial for reconsideration of its request to allow late filing of answers to plaintiffs' requests for admissions or to strike the admissions; the court denied the motions and recognized the denial in its pre-trial order.

On conclusion of the trial, the district court held that under the applicable law of Pennsylvania,[2] the Uniform Commercial Code (UCC), GE had violated implied warranties of merchantability and fitness for a particular purpose in supplying the defective roof. The court assessed damages at $120,000 (the figure which the court determined to be the cost of replacement) plus $29,328.69, representing monies spent by plaintiffs to maintain the roof in a state of repair for the years 1974–1978.[3] The court denied any recovery for the allegedly defective cabinets, concluding that "plaintiffs have failed to sustain their burden and are not entitled to recover on their claim of damages to the kitchen cabinets."

Plaintiffs then filed a motion under Fed. R.Civ.P. 59(e) to have the court amend its judgment. Plaintiffs sought reconsideration of both the amount assessed for the roof and the failure of the court to find liability for the kitchen cabinets. They also sought the addition of prejudgment interest to the award.

In its order denying plaintiffs' motion, the court rejected plaintiffs' argument that the court was bound by the prior admissions.

Had plaintiffs desired, they could have refrained from attempting to introduce at trial the testimony of [their experts], thus depriving the Court of the opportunity to observe these witnesses live and under examination and to determine their credibility in comparison with the proof adduced by the defendant. But, having chosen to proceed with these witnesses, the Court in its function as factfinder and pursuant to the provisions of Rule 36(b), Fed.R.Civ.P., is not bound to accept the admission as proof of damages. This is particularly true where, as here, "presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." [Citations omitted.]

In short, the Court finds and rules that it would be blatantly unfair to permit plaintiffs at this late date, after they had full opportunity to present the veracity of witnesses and weight of their testimony to the trial court, to fall back on documents marked in evidence on the basis that they were admitted and cannot be contested.

*Brook Village North Associates v. General Electric Co.*, No. 75–362, typescript op. at 2–3 (D.N.H. Apr. 30, 1981). The court also held that under Pennsylvania law the plaintiffs were not entitled to prejudgment interest. This appeal followed.

### II.

Plaintiffs argue that they are entitled, at a minimum, to recover damages established

---

**2.** The purchase contract specifically provided that it be interpreted in accordance with the laws of Pennsylvania. The parties agreed in the district court that Pennsylvania law should be applied. The court accordingly directed in pre-trial orders that the law of Pennsylvania be applied to this action. Insofar as it is applicable, we apply Pennsylvania law.

**3.** The court also held (1) that plaintiffs were not entitled to recover under a theory of strict products liability; (2) that plaintiffs were not barred from recovery by any limitations expressed in the agreement between the parties; and (3) that there was no accord and satisfaction. None of these conclusions is challenged on appeal. Nor does GE contest its liability to plaintiffs for some damages because of the faulty roof.

as of 1975 in letters deemed admitted as true when GE failed timely to respond to the request for admissions and the district court repeatedly denied defendant's pre-trial motions to allow its reply to be filed out of time. One of those letters, written by a roofing contractor, establishes that in 1975 the cost of replacing the defective roof was $194,720. Another letter, written by the manager of the kitchen division of Evans Products Company, reports that the lamination on the kitchen cabinet doors and drawer fronts in the complex is "totally unstable" and that the only solution is replacement throughout. It fixes the cost at $17,-136 plus tax. Despite these admissions, plaintiffs had the writers of the letters testify, primarily for the purpose of establishing the increased cost of replacement at the time of trial. Plaintiffs' experts testified that the cost of replacing the roof had increased to $363,980, and the cabinets to $55,817.60. The district court allowed defendant to call an expert witness who testified that the cost of reroofing was $120,000, and the building manager who testified that he had only seen delaminated cabinets in some of the units. The court found the defendant's evidence more credible and awarded judgment in the lower amount for the roof and none for the kitchen cabinets.

### A.

Rule 36 provides in relevant part:

(a) **Request for Admission.** A party may serve upon any other party a written request for the admission . . . of the truth of any matters . . . that relate to statements or opinions of fact or of the application of law to fact . . . .

. . . The matter is admitted unless, within 30 days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection . . . .

.     .     .     .     .

(b) **Effect of Admission.** Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of Rule 16 governing amendment of a pretrial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits.

Under Rule 36 in its present form (the rule was amended in 1970), if a party fails timely to answer a request for admissions, the requested items are deemed admitted. Any matter thus admitted under the Rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. And courts have not hesitated in appropriate cases to apply the sanction of Rule 36 to material facts that conclusively establish or preclude a party's claim. *See, e.g., Rainbolt v. Johnson,* 669 F.2d 767 (D.C.Cir.1981); *United States v. Kenealy,* 646 F.2d 699 (1st Cir.), *cert. denied,* 454 U.S. 941, 102 S.Ct. 478, 70 L.Ed.2d 250 (1981).

■ The instant case poses the question of the discretion of a district court to permit withdrawal or amendment of an admission by default once trial has commenced. In general, the standard for being relieved of a failure to respond in a timely fashion to a request for admissions is permissive: a court may allow withdrawal or amendment of an admission "when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits." Fed.R.Civ.P. 36(b). The prejudice contemplated by the Rule is not simply that the party who initially obtained the admission will now have to convince the fact finder of its truth. Rather, it relates to the difficulty a party may face in proving its case, *e.g.,* caused by the unavailability of key witnesses, because of the sudden need to obtain evidence with respect to the questions previously answered by the admissions. *See Westmoreland v. Triumph*

*Motorcycle Corp.*, 71 F.R.D. 192 (D.Conn. 1976).

The Rule understandably imposes a more restrictive standard, however, on the granting of a request to avoid the effect of an admission once trial had begun. Rule 36(b) specifies that the court can permit withdrawal or amendment of admissions "[s]ubject to the provisions of Rule 16 governing amendment of pre-trial order." Rule 16 authorizes the conduct and defines the contours of a conference before trial. "The chief purposes of the pre-trial conference are to define and simplify the issues, to lessen surprise at trial and the risk of judicial error, to conclude stipulations on matters of evidence, and to promote settlements." 3 J. Moore, *Moore's Federal Practice* ¶ 16.03 at 16–6 to 16–7 (2d ed. 1982) (footnote omitted). To give effect to matters resolved at conference, Rule 16 provides for the court to make an order "which recites the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreement of counsel." The pre-trial order, once entered, controls the subsequent course of action. "No proof need be offered as to matters stipulated to in the order, since the facts admitted at the pre-trial conference and contained in the pre-trial order stand as fully determined as if adjudicated at the trial." 3 J. Moore, *supra*, ¶ 16.19 at 16–40 to 16–41 (footnote omitted). The order can be modified at trial, but only "to prevent manifest injustice." Thus, Rule 16 by its terms sets a higher threshold for a trial judge to exercise his discretion to avoid the force of admissions under Rule 36 once trial has begun.

The district court in the instant case appears to have disregarded the existence of this higher threshold for opening up admissions after commencement of trial. In its order denying reconsideration of plaintiff's motion to amend the finding as to damages, the court held, first, that because plaintiff chose to proceed with the presentation of supplemental evidence touching on the matters governed by the admissions, plaintiffs waived their right to rely on them; and second, that because withdrawal of the admissions aided presentation of the merits and did not prejudice plaintiffs, the court as fact finder was no longer bound to accept them as proof of damages. This analysis stands at odds with the intendment of Rule 36.

The first rationale on which the district court relied, namely that if a plaintiff presents evidence which overlaps questions controlled by admissions by default he thereby waives the right to rely on the matters controlled by the admissions, works an unfair disadvantage on parties who properly seek to take advantage of Rule 36. Generally, the proof of a plaintiff's case may involve establishing a number of facts, some of which will be controlled by admissions and some of which will not. The party who obtains the admissions by default may be unsure what other facts must be established for him to prevail. Or he may, as in the present case, wish to present supplemental evidence in order to recover damages beyond those established by admission. In such cases, the waiver rule applied by the district court would either discourage parties from introducing additional evidence or would completely vitiate the conclusive effect of admissions by default obtained under the Rule.[4]

---

4. The advisory committee note to the revised Rule 36 supports the conclusion that the district court's waiver analysis impermissibly undercuts the conclusive effect that the framers of the Rule intended admissions to have.

  The new provisions give an admission a conclusively binding effect, for purposes only of the pending action, unless the admission is withdrawn or amended. In form and in substance a Rule 36 admission is comparable to an admission in pleadings or a stipulation drafted by counsel for use at trial, rather than to an evidentiary admission of a party. (Citations omitted.) Unless the party securing an admission can depend on its binding effect, he cannot safely avoid the expense of preparing to prove the very matters on which he has secured the admission, and the purpose of the rule is defeated. (Citations omitted.)

■ Requiring a party thus to elect between relying on admissions by default and introducing no evidence, and introducing evidence but foregoing the binding force of the admissions, unfairly forces a party who chooses to make use of admissions by default to limit his proof at trial to the scope of his request for admissions. We therefore hold that a party who obtains an admission by default does not waive his right to rely thereon by presenting evidence at trial that overlaps the matters controlled by the admission.[5]

The district court, in adopting its second rationale for its conclusion that the admissions need not be viewed as binding, expressed a concern for "accord[ing] substantial justice over mere technical contentions." The court concluded, in effect, that having determined as fact finder that defendant's witnesses were more credible than plaintiffs', justice would be served if the court were free to consider anew the matters governed by the admissions.

■ To the extent that the court's analysis equates the standard for permitting withdrawal or amendment of admissions pre-trial with the standard for opening up admissions once trial has begun, we reject it. Rule 36 plainly contemplates a more restrictive standard for foregoing the conclusive effect of admissions once trial has begun. *See supra,* at 70–71.

The court's ultimate conclusion is not, however, thereby disposed of. For framing the district court's argument in a way that renders it consonant with Rule 36's incorporation of Rule 16's standard for opening up admissions once trial has begun, the district court concluded that "to prevent manifest injustice," it was free to "allow withdrawal" of an admission after trial had commenced if the court as fact finder found evidence presented by the party bound by the admission to be more credible than the evidence presented by the party having the benefit of admission.

The district court cited a number of cases to support its decision. Most of the cases cited in which courts have allowed withdrawal of admissions involved questions raised at the pre-trial stage, however, and are therefore not directly relevant. *See, e.g., Marshall v. Sunshine & Leisure, Inc.,* 496 F.Supp. 354, 355–56 (M.D.Fla.1980); *St. Regis Paper Co. v. Upgrade Corp.,* 86 F.R.D. 355, 357 (W.D.Mich.1980); *Pleasant Hill Bank v. United States,* 60 F.R.D. 1 (W.D. Mo.1973). *Cf. Westmoreland v. Triumph Motorcycle Corp.,* 71 F.R.D. 192, 192–93 (D.Conn.1976) (motion to strike untimely responses after entry of pre-trial order but before trial allowed).

Two decisions cited by the parties squarely present the issue at bar. *Warren v. International Brotherhood of Teamsters,* 544 F.2d 334 (8th Cir. 1976); *Dependahl v. Falstaff Brewing Corp.,* 491 F.Supp. 1188 (E.D.Mo.1980), *rev'd in part on other grounds,* 653 F.2d 1208 (8th Cir.), *cert. denied,* 454 U.S. 968, 102 S.Ct. 512, 70 L.Ed.2d 384 (1981). In each, the court at trial allowed the introduction of evidence on questions covered by admissions that were obtained because requests therefor were not timely answered and subsequently ruled that the admissions would not be binding. Each case, however, involved other factors not present in the case at bar that supported the district court's action. In *Warren,* the sole reason for the failure to timely respond was a misreading by counsel of the time for filing provisions of the rule. 544 F.2d at 338–39. And in *Dependahl* the parties had unsuccessfully attempted to reach a settlement before trial. "Defendants' failure to timely deny is undoubtedly attributable in large part to plaintiffs' effort to enforce the settlement, and subsequent abandonment of that effort." 491 F.Supp. at 1194.

No similar extenuating circumstances are present in the case at bar. Plaintiffs immediately moved to strike the defendant's re-

---

Fed.R.Civ.P. 36 advisory committee note on 1970 amendment to rules.

**5.** This does not mean, however, as we indicate below, that the trial court is in all circumstances bound by the admissions. *See infra,* at 73–74.

sponses when more than nine months after the request of admissions was served, defendant finally responded. Defendant's motions for reconsideration to be allowed to file out of time were thrice denied prior to trial. This case therefore does not involve a simple, technical default, or a default in which the plaintiff shares responsibility.[6]

A recent court of appeals decision reaches a result contrary to *Warren* and *Dependahl* on facts in many respects identical to those at bar. In *Rainbolt v. Johnson*, 669 F.2d 767 (D.C.Cir.1981), the appellate court reversed a decision of the district court confirming a Master's report because the Master had not given full effect to admissions by default. Although the district court had denied a motion to withdraw unanswered admissions,

> the Auditor-Master did not treat the admissions as "conclusively established." Instead, the Auditor-Master accepted some of the admitted facts and rejected others in the light of all of the evidence.

*Id.* at 769. Instead of awarding the plaintiffs damages in excess of $900,000, as established by the admissions, the Master substituted a figure of $175,391.68 based on his independent calculation of the amount to which plaintiffs were entitled. The court of appeals reversed with directions to enter partial summary judgment in the amount of $900,000.

■ We believe that the tack taken by the court in *Rainbolt* represents the sounder approach. Rule 36 plainly contemplates that a party seeking to avoid at trial the force of admissions obtained by default faces a higher burden than does a party seeking identical relief prior to the entry of the pre-trial order. We do not believe that the situation presented by this case, where the district court sitting as fact finder simply finds more credible the witnesses of the party against whom the admissions operate, rises to the level of "manifest injustice" required for relief from the effect of admis-

sions, although permitting such relief may well subserve the presentation of the merits. To so hold would eradicate the distinction created under the Rules between pre-trial and post-commencement of trial requests for relief from admissions. That the party found to be less credible may prevail because of the other side's failure to comply with the timeliness requirements of Rule 36 does not result in the type of manifest injustice contemplated under the Rules.

■ This does not mean that a district court is never free to permit withdrawal or amendment of admissions after considering the evidence presented at trial. For example, if a district court reviewing the evidence concludes that no rational fact finder could believe the facts established by the admissions to be true, the court might permit withdrawal or amendment so long as the party who obtained the admissions is not otherwise prejudiced. It is not enough, however, that the court as fact finder disbelieves one party's expert testimony.

We therefore hold that a district court is not free to permit amendment or withdrawal of admissions by default after trial merely because the parties presented evidence touching on matters governed by the admissions and the court finds more credible the evidence of the party against whom the admissions operate.

### B.

■ By virtue of one of the untimely answered requests for admission defendant is deemed to have admitted the truth of plaintiffs' expert's letter of December 9, 1975. The letter describes the manner in which the roof is faulty, suggests how it can be corrected, and estimates the cost of re-roofing at $194,770. Although the testimony at trial produced greatly disparate estimates by plaintiffs' and defendant's experts of the current cost to replace the roof—the

---

**6.** The *Warren* and *Dependahl* decisions do speak very broadly about the discretion of a district court to disregard the binding force of admissions post-trial when the matters covered by the admissions are litigated at trial. We decline to adopt such a position, noting that neither decision articulates a distinction between requests for relief from admissions made pre-trial and those made after trial has begun.

plaintiffs' expert set the figure at $363,980, the defendant's at $120,000—we conclude that the district court could not have determined from all of the testimony that no rational fact finder could have found the amount established by the admissions to be correct.[7] Defendant is therefore bound by the admission.

Moreover, plaintiffs may in fact have been prejudiced by the failure of the court to give conclusive effect to the admissions. The thrust of plaintiffs' proof was aimed at establishing the *current* cost of the roof repair. Plaintiffs did not, therefore, present evidence to establish that the roof repairs described in the admission were consistent with the quality of roof called for in the contract. The district court, however, concluded that plaintiffs were only entitled to a "Class C" roof, and therefore discounted plaintiffs' expert's testimony, which the court apparently believed described a roof of better than "Class C" quality. *See supra* note 7. Had plaintiffs known that the admissions would not be given conclusive effect they might well have presented evidence to bolster their claim, raised on appeal, that "Class C rating" as used in the contract refers to UL fire retardance only and not to the general quality of the roof.

Although the district court was not free to reject the admission of $194,720 as the cost of replacing the roof, the same constraints do not apply to its evaluation of the testimony of plaintiffs' expert at trial as to the increased cost of replacing the roof in 1978. As the fact finder, the court was free to discount this testimony in the face of other evidence. On the record before us, the district court's rejection of the $363,-900.10 figure was not clearly erroneous. Accordingly, the district court having found the defendant liable to plaintiffs to replace the roof under implied warranty theories, GE is liable to plaintiffs in the sum of $194,720 for the replacement of the roof.

### C.

By virtue of another untimely answered request for admission, defendant is deemed to have admitted the truth of plaintiffs' letter of October 15, 1974, relating to the kitchen cabinet doors and drawer fronts at the complex. The letter provides in relevant part:

I have inspected the kitchen cabinet doors and drawer fronts of the above mentioned project and find that the plastic lamination is totally unstable. *The only solution would be to remove all the present doors and drawer fronts and replace them with new ones.* (Emphasis added.)

The letter sets the cost of replacement as of the date of the letter at $17,136.00 plus tax. In another request, defendant admits plaintiffs are "no[ ] more than 0% responsible for any kitchen cabinet delaminations."

At trial plaintiffs' expert testified that the current replacement cost was $55,-817.60. The district court concluded, how-

---

7. Indeed, the district court appears to have misapprehended testimony regarding the quality of the roof. In the course of the testimony of defendant's expert, Campeau, on redirect examination, he cryptically testified for the first and only time, over plaintiffs' objection, that the roof "qualifies as a Class C roof" and estimated the cost of replacement at $120,000. He furnished no details. The district court apparently assumed from this unexplained statement that "Class C" denoted the quality of construction GE obligated itself to provide. It therefore rejected the figure of $194,720 established in the admission and the plaintiffs' expert testimony as to the current cost of replacement of $363,980. However, the contract between the principals is more specific than the testimony of defendant's expert. The contract specifications speak in terms of the material to

be used in roof construction and of a "UL rating of Class C or better." Section 0754 of the specifications provides: "Roofing system shall be an elastomeric membrane type roof by B. F. Goodrich (Flexseal I) St. Clair Rubber Company or Silicone Roof Topping by G. E. Co. Roofing shall have a UL rating of Class C or better." The plaintiffs contend in their brief that a "UL (Underwriters Laboratories) rating of Class C refers only to the fire resistant characteristics of the roof and does not establish a standard of construction quality," a contention that is confirmed by the *Fire Protection Handbook of the National Fire Protection Association* 8–76 to 8–85 (13th ed. 1969). GE's response in its brief avoids the question and merely asserts: "The contract clearly states that it is to be a class-C type of roof."

ever, that plaintiff had failed to prove damages for the kitchen cabinets. The opinion notes that the project's maintenance manager testified that he saw delamination in only some of the apartments, and plaintiffs' expert only visited three apartments immediately before trial. The opinion also notes that GE, upon being advised of the delamination claims, sent handles intended to cure the damage, but the handles were never used and were eventually lost. Finally, the court observed that under the law of Pennsylvania "where one party to a contract is the cause of another's failure to perform, it cannot assert that failure against the other party."

■ We conclude that the district court erred in denying plaintiffs recovery for the kitchen cabinets. The admission respecting liability and damages for the cabinets is by itself sufficient to satisfy plaintiffs' burden of proof. The letter establishes that the defects exist throughout and sets the cost for correcting the problem.

Although the testimony was in conflict, it is not so blatantly one-sided as to allow the district court to disregard the admissions. Not only does plaintiffs' expert's admitted letter note that the delamination extended throughout, but the letter dated October 29, 1974, of plaintiffs' counsel to John Smoltz, defendant's representative, specifically refers to "defective cabinet laminations in 160 units" of the complex. A later letter of April 29, 1975, to GE from plaintiffs' counsel asserts that "[t]he cabinet delamination has affected every apartment." Plaintiffs' witness Shaw also testified that he familiarized himself with the kitchen cabinets as the modules arrived at the project; described the nature of the delamination on the doors and drawers, and in response to a question as to how widespread was the delamination, replied "throughout."

The defendant is therefore bound by its admission [8] that "the only solution" is total replacement of the cabinets at a cost of $17,136. Although the district court as fact finder is free to disbelieve plaintiffs' expert's testimony as to the increased cost of replacement, the admission should be viewed as setting the minimum amount of damages.[9] The district court did not, however, consider whether plaintiffs' testimony as to the increased cost of replacement was in fact credible. We remand for that limited purpose.

### III.

■ Plaintiffs argue on appeal that they are entitled to prejudgment interest. Their first argument is directed to the law to be applied to this question. Under New Hampshire law, prejudgment interest is available by statute. N.H.Rev.Stat.Ann. § 524:1–b (1974). *See Shepard v. General Motors Corp.*, 423 F.2d 406 (1st Cir. 1970). Under Pennsylvania law, prejudgment interest is generally not available for unliquidated contract claims except in the narrow situation where in the exercise of his discretion the trial judge determines that it is necessary for fair compensation at the time of judgment. *Rea v. Ford Motor Co.*, 560 F.2d 554, 558 (3d Cir.), *cert. denied*, 434 U.S. 923, 98 S.Ct. 401, 54 L.Ed.2d 281 (1977); *Eazor Express, Inc. v. International Brotherhood of Teamsters*, 520 F.2d 951, 973 (3d Cir. 1975), *cert. denied*, 424 U.S. 935, 96 S.Ct. 1149, 47 L.Ed.2d 342 (1976). *See also Miller v. Robertson*, 266 U.S. 243, 258, 45 S.Ct. 73, 78, 69 L.Ed. 265 (1924). Plaintiffs argue that New Hampshire law should govern the prejudgment interest question because (1) the contract only specifies that it will be *interpreted* under Pennsylvania law; it does not specify that the rights and liabilities of the parties will also be governed by

---

8. We note that the issue of whether the district court may have abused its discretion in not permitting withdrawal or amendment of the admissions prior to trial is not before us on appeal. However, even if it were, in balancing equities in the post-trial stage of the proceeding, we believe that the plaintiffs are entitled to rely on the conclusive effect of the admissions.

9. Because the district court's alternative holding, that plaintiffs contributed to the delamination by not affixing the handles, is inconsistent with the admission, it cannot provide a basis for avoiding defendant's liability to plaintiff.

Pennsylvania law; and (2) under New Hampshire's choice of law rules, to be applied in this diversity case, which require a consideration of the relevant "choice influencing considerations," see *Clark v. Clark*, 107 N.H. 351, 222 A.2d 205 (1966), New Hampshire law should govern.[10]

■ Whatever the merits of plaintiffs' argument, they cannot now raise it. Plaintiffs accepted the district court's ruling below that Pennsylvania law governed the rights and liabilities of the parties, and in fact argued in their motion for rehearing that Pennsylvania law should apply. Having taken one position below, they cannot change their stance on appeal. The district court considered plaintiffs' claim for pre-judgment interest and after analyzing Pennsylvania law concluded "that plaintiffs are not entitled to pre-judgment interest under the applicable law of Pennsylvania." After reviewing the facts of this case and Pennsylvania law, we find no error in the district court's ruling.

### IV.

In summary, the judgment of the district court will be vacated and the case remanded with instructions to the district court to enter judgment for the plaintiffs in the sum of $194,720 as damages for the roof and $29,329.69 for interim repairs, to make findings with respect to the damages for the kitchen cabinets in a sum not less than $17,135, and to enter judgment therefor. The claim for prejudgment interest is denied.

*So ordered.*

---

10. Plaintiffs also argue that they are entitled to prejudgment interest under both Pennsylvania law and the UCC. We conclude that both arguments are without merit.