Victoria L. ALBERTY–VÉLEZ,
Plaintiff, Appellant,

v.

CORPORACIÓN DE PUERTO RICO
PARA LA DIFUSIÓN PÚBLICA
et al., Defendant, Appellee.

No. 99–2002.

United States Court of Appeals,
First Circuit.

Heard Nov. 14, 2000.

Decided March 16, 2001.

**419**

Alberto G. Estrella, with whom Gerardo J. Hernández and William Estrella Law Offices PSC were on brief for appellant.

Pablo Landrau–Pirazzi, with whom Aldarondo & López Bras was on brief for appellee.

Before LYNCH and LIPEZ, Circuit Judges, and GARCÍA–GREGORY, District Judge.[*]

LIPEZ, Circuit Judge.

Victoria Alberty–Vélez appeals from the judgment of the district court in favor of the defendant, Corporación de Puerto Rico para la Difusión Pública ("WIPR"), in her lawsuit for sex and pregnancy discrimination. Following a five-day jury trial, the district court granted the defendant's Rule 50 motion, concluding as a matter of law that Alberty was an independent contractor, not an employee, and therefore not protected by Title VII of the Civil Rights Act, 42 U.S.C.2000e. Accordingly, the court determined that there was no question of fact to be submitted to the jury. Earlier, in a summary judgment ruling, the court had decided that Alberty was an employee of WIPR and hence subject to the protections of Title VII. Alberty argues that she relied on the earlier determination in trying her case, and that the

unexpected change in position at the end of the trial prejudiced her. We agree. We vacate the judgment and remand for further proceedings.

## I. Background

Victoria Alberty–Vélez ("Alberty") was hired[1] in 1993 by WIPR, a television station in Puerto Rico, to be a host for its new program "Desde Mi Pueblo." The program profiled municipalities in Puerto Rico through visits by the hosts and interviews with residents. Alberty and her two co-hosts, Luis Antonio Rivera (known as "Yoyo Boing") and Deborah Carthy Deu, typically taped ten programs in one four-day work week. Initially, Alberty was paid $400 for each program, but she requested, and received, a raise to $550 per program in December 1993. At trial, Alberty testified that "Desde Mi Pueblo" "immediately became one of the people's favorite programs." The program's producer, Jorge Inserni, also testified that the program was a success with the public.

Nearly one year later, Alberty became pregnant with her first child. Initially, she continued to perform her routine job duties, including tapings and public appearances to promote the program. Following medical complications with her pregnancy, however, Alberty informed WIPR, through Inserni, that her doctor had ordered her not to travel for the remainder of her pregnancy. While she initially planned to continue her job but merely refrain from traveling outside the metropolitan area of San Juan, Alberty notified WIPR two weeks later that her doctor had ordered her not to work at all. She further notified the station that she was taking maternity leave pursuant to Puerto Rico law.[2]

---

[*] Of the District of Puerto Rico, sitting by designation.

1. WIPR objects to Alberty's use of the word "hired," as opposed to "contracted," arguing that she was an independent contractor, not an employee of WIPR, and hence "hired" would not accurately characterize her rela-

tionship to that company. We express no opinion on whether Alberty was an independent contractor or an employee, and use the term "hired" merely for convenience.

2. Alberty's employment status after her departure from the show in November remains unclear because conflicting testimony was of-

Alberty's son was born in January 1995. Less than one month later, she met with Inserni and informed him of her intention to return to "Desde Mi Pueblo." Shortly thereafter, she wrote to WIPR, and to Inserni, advising them of her hope to return to the show by February 13, one month after the birth of her son. Alberty never received a response to her letters. Inserni testified at trial that he never saw a copy of that letter, but that if he had, he would not have responded to it under the assumption that the station's legal department was handling Alberty's employment status.

On February 28, a reporter for a local newspaper published an article stating that Alberty would not be returning to "Desde Mi Pueblo," and that WIPR had hired a new host, María Falcón, to replace her. Alberty immediately contacted the newspaper to inform the reporter that the information was inaccurate because she still intended to return to the show. WIPR also issued an official press release stating that Alberty would not be returning to "Desde Mi Pueblo" because she had decided to stay at home with her son. Alberty testified at trial that no one from WIPR ever contacted her to verify whether she intended to return to "Desde Mi Pueblo." Additionally, WIPR did not respond to her request for an explanation and retraction of the press release.

Alberty filed for unemployment benefits from the Puerto Rico Department of Labor in June 1995. The Department determined that Alberty was an employee of WIPR and granted the benefits.

Alberty filed her complaint in the instant lawsuit in April 1996, naming as defendants WIPR, Concepto Creativo, William Denizard, Coco Salazar,[3] Inserni, and WIPR. She filed an amended complaint

shortly thereafter. Alberty claimed that she was discriminated against on the basis of her sex, and because of her pregnancy, in violation of Title VII of the Civil Rights Act, 42 U.S.C.2000e, and of Puerto Rico laws prohibiting discrimination on the basis of sex and pregnancy, P.R. Laws Ann. Tit. 29, 146 *et seq.* and P.R. Laws Ann. Tit. 29, 467 *et seq.* She also presented a number of contract claims under Puerto Rico law. Following motions for summary judgment brought by all parties, the district court granted summary judgment in favor of all defendants except WIPR and ruled that Alberty was an employee of WIPR. The pretrial order submitted by Alberty and WIPR, and approved by the court, stated in its enumeration of uncontested facts that "Alberty was an employee of WIPR."

Following a five-day trial to a jury, WIPR moved, pursuant to Federal Rule of Civil Procedure 50, for judgment as a matter of law. WIPR claimed that it was entitled to entry of judgment because Alberty was an independent contractor not subject to the protections of Title VII, a finding that would render irrelevant the submission of any other factual questions to the jury. In opposition, Alberty argued that the district court had already ruled on this issue in her favor at the summary judgment stage. Additionally, Alberty contended that the court had erred by allowing WIPR to present evidence that Alberty was an independent contractor because such evidence was contrary to the court's pretrial determination and irrelevant in light of the pretrial order defining the issues for trial. After a brief hearing, the district court ruled in favor of WIPR, finding that Alberty was an independent contractor, and dismissed the jury.

fered on this point at trial. Alberty testified that she had always intended to return to "Desde Mi Pueblo," while Inserni stated that he understood there was no future commitment between Alberty and WIPR at the time of her departure.

3. Denizard and Salazar were Alberty's immediate supervisors at "Desde Mi Pueblo."

## II. The Summary Judgment Ruling and the Pretrial Order

■ Title VII defines "employee" as "an individual employed by an employer." 42 U.S.C. § 2000e(f). The Supreme Court has recognized that this definition "is completely circular and explains nothing," *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992),[4] and we have characterized it as "a turn of phrase which chases its own tail," *Serapión v. Martínez*, 119 F.3d 982, 985 (1st Cir.1997). Despite this lack of statutory guidance, courts have interpreted "employee" to exclude independent contractors under Title VII. *See, e.g., Dykes v. Depuy, Inc.*, 140 F.3d 31, 37 n. 6 (1st Cir.1998). Thus, a finding that Alberty was an independent contractor, and not an employee of WIPR, would preclude any recovery from the company under Title VII. Such a determination is a question of federal law. *See Serapión*, 119 F.3d at 988.

In the summary judgment ruling at issue in this appeal, the district court stated: "After having taken into account all the factors above mentioned [referring to the factors relevant to the independent contractor/employer determination], this Court finds that Alberty was an employee of WIPR." The pretrial order incorporated this ruling as one of the uncontested facts: "This Honorable Court ruled that Alberty was an employee of WIPR." The pretrial order also identified the seven remaining contested issues of law:

1. Whether Alberty intended to return to "Desde Mi Pueblo" after giving birth to her son.

2. Whether the fact that Alberty was absent due to her pregnancy was a motivating factor in WIPR's employment decision in violation of Title VII of the Civil Rights Act.

3. If the jury finds that WIPR [sic] acts were discriminatory, whether these acts were intentional and thus require the imposition of punitive damages.

4. Whether WIPR retaliated against Alberty.

5. Whether WIPR violated Puerto Rico laws of discrimination.

6. Whether Alberty is entitled to reinstatement.

7. Amount of damages.

As the list reveals, Alberty's status as an employee is not specified as one of the issues to be litigated at trial.

On the third day of trial, immediately before WIPR began to present its defense, the court denied Alberty's motion in limine to exclude evidence of the norm in Puerto Rico for the employment of television hosts for shows similar to "Desde Mi Pueblo," notwithstanding the court's partial summary judgment adjudication and the pretrial order.[5] The court also overruled Alberty's repeated objections to such

---

4. While *Darden* discussed the definition of "employee" under ERISA, *see* 29 U.S.C. § 1002(6), our interpretation of that definition under ERISA and Title VII is similar, *see Serapión v. Martínez*, 119 F.3d 982, 985 (1st Cir.1997).

5. Alberty filed her motion in limine approximately one month before trial, in May 1999. She stated in the motion: "Defendant may seek to introduce evidence at Trial, through its various witnesses, that artists in the entertainment industry in Puerto Rico do not have an expectancy to continued employment." She argued in the motion that the issue of her expectation to continued employment had been resolved by the court's ruling that she was an employee and not an independent contractor. WIPR responded to this motion by arguing that such evidence regarding industry custom remained admissible notwithstanding the court's prior ruling because "evidence of the defendant's state of mind regarding the perception of the working relationship with plaintiff is relevant to the issue of intent." This statement does not reveal WIPR's intention pre-trial to dispute at trial the settled issue of her employment status by offering evidence of industry custom to prove that she was an independent contractor. Moreover, since the court did not rule on the motion in limine until the defense began presenting its case on the third day of trial, there was no signal from the court pre-trial that it was reopening the employment status issue.

evidence throughout the remainder of the trial. At the end of the trial, WIPR moved for judgment as a matter of law, arguing that the evidence indicated that Alberty had never been WIPR's employee. The district court granted the motion, citing evidence not before it at the summary judgment stage:

I mean, if I would have had more of this evidence, if I would have had the actual contracts, the actual checks where payments were made where no deductions were made, if I would have had the deposition testimony as to what was the practice in the industry, what were the 1,200 employees, what type of relationship were, [sic] the balancing test that I made in my opinion and order if by the way you read it, there are more factors which I mentioned in my opinion of December that would favor an opinion at that time that the plaintiff was an independent contractor than there are factors which determine that she was not, that she was an employee.... What I should have done counsel, I should have said, I do not have sufficient evidence in front of me to decide the summary judgment issue whether she is an employee or an independent contractor. Let's go to trial. In part I did mention it before, I take part of the blame. The fault was on me. I should have done that instead of going ahead and saying she was an employee.

■ Although the court's candor in explaining its rethinking is commendable, the court's earlier summary judgment ruling had a significance that the court did not fully appreciate. Its determination that Alberty was an employee was an entry of partial summary judgment pursuant to Fed.R.Civ.P. 56(d). Facts specified in such circumstances "shall be deemed established, and the trial shall be conducted accordingly." Fed.R.Civ.P. 56(d). True, a trial court retains jurisdiction to modify an

order issued pursuant to Rule 56(d) at any time. *See, e.g.,* 10B Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure,* § 2737 (3d ed.1998); *see also Fed. Deposit Ins. Corp. v. Massingill,* 24 F.3d 768, 774 (5th Cir. 1994). However, if the judge "subsequently changes the initial ruling and broadens the scope of trial, the judge must inform the parties and give them an opportunity to present evidence relating to the newly revived issue." *Leddy v. Standard Drywall, Inc.,* 875 F.2d 383, 386 (2d Cir.1989) (finding that the trial judge "did not give appellants clear notice that he was revising that order nor an adequate opportunity to adjust the presentation of their case once he decided not to follow the order").

There is an important relationship between Rule 56(d) and Rule 16, which addresses pretrial conferences. A partial summary judgment adjudication pursuant to Rule 56(d) has been compared to a pretrial order under Fed.R.Civ.P. 16 "[i]nasmuch as it narrows the scope of trial." Wright, *Federal Practice & Procedure,* § 2737. *See also Cohen v. Board of Trustees,* 867 F.2d 1455, 1463 (3d Cir.1989); *Travelers Indem. Co. v. Erickson's, Inc.,* 396 F.2d 134, 136 (5th Cir.1968) (stating that "an order of the type described in Rule 56(d), specifying facts established without controversy, [is] analogous to a pre-trial order under Rule 16"). As the advisory committee notes to Rule 56 state, "[t]his adjudication is more nearly akin to the preliminary order under Rule 16, and likewise serves the purpose of speeding up litigation by eliminating before trial matters wherein there is no genuine issue of fact." Rule 56(d) Advisory Committee's Notes. In this case, the judge entered a pretrial order reflecting its ruling on partial summary judgment that Alberty was an employee. Therefore, we draw on the law applicable to such orders to further guide our analysis.[6]

---

**6.** Of course, if the pretrial order had neglected to incorporate the summary judgment ruling, that ruling would have remained the law

of the case. *See, e.g., Leddy,* 875 F.2d at 386 (noting that if a trial court reverses its previous determination on summary judgment, the

■ Orders entered following Rule 16 conferences are not lightly disturbed. Once entered, a Rule 16 order "controls the subsequent course of action." *Brook Village North Assoc. v. Gen. Elec. Co.*, 686 F.2d 66, 71 (1st Cir.1982). "No proof need be offered as to matters stipulated to in the order, since the facts admitted at the pretrial conference and contained in the pre-trial order stand as fully determined as if adjudicated at the trial." *Id.* (quotation omitted). A pretrial order "shall be modified only to prevent manifest injustice." Fed.R.Civ.P. 16(e). *See also Brook Village*, 686 F.2d at 71. Furthermore, a pretrial order may be modified only where there is no substantial injury or prejudice to the opposing party. *See Hale v. Firestone Tire & Rubber Co.*, 756 F.2d 1322, 1335 (8th Cir.1985) (finding that district court committed reversible error in admitting evidence excluded by the pretrial order without making explicit findings that the other party would not be substantially prejudiced by the modification).

■ We recognize that a district court has broad discretion to preserve the integrity of a pretrial order. *See Roland M. v. Concord School Comm.*, 910 F.2d 983, 999 (1st Cir.1990). Moreover, an appellate court generally should not interfere with a trial court's decision to admit or exclude evidence based on its interpretation of its own pretrial order. *See Ramírez Pomales v. Becton Dickinson & Co., S.A.*, 839 F.2d 1, 3 (1st Cir.1988); *Geremia v. First Nat'l Bank*, 653 F.2d 1, 5 (1st Cir.1981). Absent a showing of manifest injustice or abuse of discretion, a court's ruling interpreting a pretrial order will not be disturbed on appeal. *See Nickerson v.*

*G.D. Searle & Co.*, 900 F.2d 412, 422 (1st Cir.1990).

■ Here, the district court's decision to admit evidence presented by WIPR on the issue of Alberty's employment status is not entitled to the deference accorded the interpretation of a pretrial order because the court's decision did not rest on an interpretation.[7] Both the partial summary judgment ruling and the pretrial order stated flatly that the court had determined that Alberty was an employee of WIPR, and that the trial would proceed on the remaining contested issues on the basis of that understanding. The court's unexpected reversal of this ruling at the end of the trial substantially prejudiced Alberty. Given the summary judgment ruling and the pretrial order on Alberty's employment status, Alberty had no reason to provide evidence during her case in chief that she was an employee and not an independent contractor. Moreover, the district court gave her no indication, before she rested her case, that it was reconsidering its previous ruling. The first hint of such reconsideration came in response to the Rule 50 motion made by WIPR following the presentation of Alberty's case when defense counsel stated, "Your Honor[ ] decided she was an employee." The court stated, "Well, I decided and I could be wrong."

Despite this passing comment, the subsequent discussion on the Rule 50 motion revealed the court's continuing commitment to its earlier ruling. For example, defense counsel acknowledged that he was assuming Alberty was an employee and that WIPR was bound at that point by the court's ruling. The court agreed:

---

court must inform the parties and allow them to offer evidence on the reopened issue). Given the kinship between a partial summary judgment adjudication pursuant to Rule 56(d) and a pretrial order pursuant to Rule 16, the same principle of prejudice to Alberty flowing from inadequate notice of the change in the court's ruling on Alberty's employment status, so important to the Rule 16 analysis, would continue to inform our Rule 56(d) analysis.

7. Even if the court's decision to admit that evidence plausibly could be considered an interpretation of the pretrial order—instead of a decision to reverse the partial summary judgment ruling—such an interpretation would be an abuse of discretion.

The Court: You are actually contending that she was an independent contractor?

Mr. Landrau: No, no, Your Honor.

The Court: Well, you are bound by the Court's decision—

Mr. Landrau: No, I am assuming arguendo that she was an employee during the time—

The Court: I know.

Mr. Landrau: That she worked for WIPR, but, however—

The Court: That means you are assuming it, arguendo because I ruled on that in December.

Mr. Landrau: Oh, yes, Your Honor, of course.

The Court: So your position is still that she is an independent contractor?

Mr. Landrau: Well, Your Honor, that is our position but, of course, we are bound by your ruling at this point, Your Honor.

Additionally, in addressing an argument of Alberty's counsel regarding her status as an employee, the district court said: "Of course. The defendant cannot contest that. There was a ruling in [sic] December 23rd."

Despite the court's affirmation of its employment status decision in ruling on the Rule 50 motion, the court denied Alberty's motion in limine to exclude the defendant's evidence on industry custom:

I am going to allow that evidence to come in. So, the reasons I have reconsidered this is first of all, there has been questions asked of plaintiff's witnesses, what was the relationship between Mr. Inserni and Mr. Denizard and secondly, there is the issue of whether at least in my mind reading, re-reading again last night my order of December 23, 1998, I believe that it is of utmost importance to

that opinion and order that this evidence also be received. So, having reconsidered that, plaintiff's motion in limine is denied.

Immediately prior to the commencement of WIPR's presentation of evidence, the court seems to be signaling that the employment status issue might be revisited.

The court's first explicit reconsideration of its determination that Alberty was an employee came near the end of the third day of trial, shortly after WIPR began to present evidence. Ruling on an objection by Alberty's counsel, the court stated:

I have one basic problem with my order. I am going to tell you right now, of December, 1998, that if I did commit an error and the evidence shows your client is an independent contractor, I cannot let the case go to the jury under the erroneous legal conclusion that she is an employee. That is why I opened also the scope of the defendant's evidence because that is a decision under law and I[am] having serious second thoughts whether my ruling of December 1998 was correct or not and this is one, whether she is an employee or not.

Then, on the fifth and last day of trial, the court informed Alberty that she would be given "wide latitude" to present witnesses rebutting WIPR's evidence that she was an independent contractor.

Alberty's counsel was not impressed by this offer: "We are not prepared to rebut that. We are not prepared and we cannot prepare in a short time." [8] Alberty's protests were appropriate: "Once a district judge issues a partial summary judgment order removing certain claims from a case, *the parties have a right to rely on the ruling* by forbearing from introducing any

---

**8.** Ruling on an objection by Alberty's counsel during the fifth day of trial, the court intimated that Alberty should have known her employment status remained a contested issue because the topic was raised at the deposition of the witness from whom WIPR was eliciting testimony: "It is not a surprise because you heard it in the deposition." We do not agree with the court's conclusion. Any understanding Alberty had during the pretrial proceedings about WIPR's position regarding her employment status is irrelevant because that issue was decided by the court at the summary judgment stage and was reflected in the pretrial order's limitation of the remaining contested issues.

evidence or cross-examining witnesses in regard to those claims." *Leddy*, 875 F.2d at 386 (emphasis added). The district court never adequately addressed the issue of potential prejudice to Alberty before admitting WIPR's evidence—contrary to the specifications of the pretrial order—that she was an independent contractor rather than an employee. *See Hale*, 756 F.2d at 1335.

The prejudice to Alberty was substantial. Her status as an employee was the premise of her Title VII case, yet the court's sudden reopening of that issue during the presentation of the defendant's case put Alberty in the untenable position of having to address that issue in rebuttal on short notice. Not surprisingly, when the district court asked her, at the close of WIPR's case, whether she wished to present any witnesses in rebuttal, Alberty declined to do so, explaining that the only evidence she was prepared to present was the testimony she gave during her case in chief regarding the contractual arrangement she had with WIPR and details about how she was paid.[9]

On appeal, Alberty suggests how she might have tried her case differently if she had realized that the district court was considering changing its ruling that Alberty was an employee of WIPR. To counter WIPR's renewed argument that she was an independent contractor, Alberty states that she would have expanded her own testimony, subpoenaed someone at the Puerto Rico Department of Labor to testify as to that agency's determination regarding her eligibility for unemployment benefits,[10] and called additional witnesses regarding the industry custom for television hosts in Puerto Rico. *Cf. Leddy*, 875 F.2d at 386–87 (finding harmless error where appellants conceded at oral argument that they would not have presented

additional evidence even if they had received clear notice of the judge's reconsideration). Even this brief outline of potential evidence reveals how impractical it was to expect Alberty to get the necessary witnesses to trial for presentation in rebuttal with almost no notice. The prejudice to her case could not be more palpable.

In some cases where a party has sought a new trial on the basis of prejudice resulting from surprise testimony, we have ruled that the proper remedy was a request for a continuance even when the case was being tried to a jury. For example, in *Newell Puerto Rico v. Rubbermaid, Inc.*, 20 F.3d 15, 20 (1st Cir.1994), where Rubbermaid claimed surprise because of some new computations in an expert witness's testimony on damages, we said that "the appropriate remedy would have been to ask for a continuance to allow Rubbermaid to prepare for the presentation of rebuttal testimony" or for more effective cross-examination. There we concluded that some delay in the trial would have been a feasible remedy. In other instances, we concluded that a continuance would not have been adequate to deal with the surprise claimed by a party. For example, in *Licciardi v. TIG Ins. Group*, 140 F.3d 357, 366 (1st Cir.1998), where there was a substantial change in the testimony of defendant's expert witness near the end of the trial on a crucial causation issue, contrary to what had been disclosed in a pre-trial report, we concluded that plaintiff could only meet this surprise testimony by "recall[ing] almost all of her witnesses, both expert and not," and perhaps by engaging a new expert witness. *Id.* at 366. We added: "[I]n considering what plaintiff would have had to do, even with a recess and continuance, to meet the surprise testimony, we see no practical outcomes ex-

---

**9.** Specifically, Alberty's counsel referred to her testimony about getting paid on one occasion even though she missed a taping of "Desde Mi Pueblo" due to the death of her father. Her lawyers did not elaborate on how they might have developed this testimony to ad- dress WIPR's specific arguments about her status as an independent contractor.

**10.** We imply no judgment on the admissibility or inadmissibility of such evidence.

426

cept outcomes which would have been prejudicial to plaintiff before the jury." *Id.*

This case is comparable to *Licciardi* in that all of the practical outcomes of a continuance would have been prejudicial to Alberty. The employment status issue was at the heart of plaintiff's case. Given the need to call new witnesses, the delay in the trial could have been substantial, a scenario that is usually unworkable with a jury waiting. Even if the wait had been workable, an inconvenienced jury might have held Alberty accountable for the delay and discredited the belatedly presented evidence because of the erroneous view that her preparation for trial was sloppy. It would be patently unfair to require Alberty to present her evidence in such unfavorable circumstances.[11]

***Judgment vacated. Remanded for proceedings consistent with this opinion.***

11. Perhaps recognizing the impracticality of a continuance, WIPR has not even suggested that Alberty should have sought this remedy. Of course, if this case involved a bench trial and the judge had offered a continuance, we might well feel differently about the prejudice issue.