IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| REBECCA LAMONTE, a single individual, | ) ) ) | No. 69115-5-I |
| | ) | DIVISION ONE |
| Appellant, | ) ) | |
| v. | ) ) | |
| SHERMAN COOK and JANE DOE COOK, husband and wife and the marital community composed thereof, | ) ) ) ) | |
| | ) | UNPUBLISHED OPINION |
| Defendants, | ) ) | |
| RICHARD WESTERFIELD and JANE DOE WESTERFIELD, husband and wife and the marital community composed thereof, | ) ) ) ) ) ) | |
| Respondents. | ) | FILED: March 3, 2014 |

SCHINDLER, J. — Rebecca LaMonte, Sherman Cook, and Richard Westerfield were involved in a three-car rear end collision. Following a three-week trial, the jury found Westerfield and nonparty Cook were negligent but only Cook was the proximate cause of LaMonte's injuries. The court entered judgment on the verdict dismissing the claims against Westerfield with prejudice. LaMonte argues the trial court erred by (1) granting Westerfield's motion to withdraw admissions by default under CR 36(b), (2) ruling the admissions of nonparty Cook were hearsay, and (3) allowing Westerfield to

introduce testimony from the perpetuation deposition of Cook. We affirm.

FACTS

1997 Car Accident

At approximately 12:30 p.m. on May 30, 1997, Rebecca LaMonte was driving westbound on Interstate 405 (I-405) in a Chrysler Concorde. It was raining heavily and the road was wet. Sherman Cook was behind LaMonte's car in his Volvo station wagon. A van was behind Cook's car. Richard Westerfield was driving behind the van in a Geo Metro. As LaMonte was approaching the Interstate 5 (I-5) overpass, she was in the right-hand lane and saw traffic was stopped ahead. LaMonte stepped on her brakes to stop. Cook's car hit the rear end of LaMonte's car. The van immediately swerved and moved into the left lane to avoid the collision. Westerfield was unable to stop and hit the rear end of Cook's Volvo. The Volvo came to a stop on the left-hand shoulder of the highway.

In her witness statement to the Washington State Patrol (WSP), LaMonte states that she stopped quickly. LaMonte said that after she stopped, she was hit from behind, pushing her car forward into the vehicle in front of her and deploying the airbag.

In his witness statement to the WSP, Cook states that "the car in front of me made a[n] emergency stop for another accident. I was making a[n] emergency stop as well. The car behind me hit my car. I hit the car in front of me. My car is totaled. Hit from back and front." In his witness statement to the WSP, Westerfield states, "Driving behind Volvo - rain & wet pavement. Volvo swerved when braking; I could not stop in time - impacted Volvo from rear. No other cars hit me (I was last in line)."

2000 Lawsuit

On March 3, 2000, LaMonte filed a personal injury lawsuit against Cook and Westerfield. LaMonte alleged Cook and Westerfield "operated their vehicles in a negligent and careless manner so as to cause their vehicles to collide with the plaintiff's vehicle." The lawsuit claimed LaMonte "sustained serious and permanent injuries, including, but not limited to, Fibromyalgia."

On April 3, LaMonte filed an amended complaint. The amended complaint alleged, in pertinent part:

> The plaintiff's vehicle was stopped for traffic ahead of her, which was stopped due to a[n] earlier vehicle collision which blocked her lane of travel, when Defendant COOK's vehicle collided with the rear of plaintiff's vehicle, and/or then Defendant WESTERFIELD failed to stop the vehicle he was operating and collided into Defendant COOK's vehicle, which then collided into plaintiff's vehicle.

On April 4, LaMonte served Cook with requests for admission. On April 8, LaMonte served Westerfield at his residence in Puyallup with a copy of the summons and the first amended complaint, the order setting civil case schedule, interrogatories, requests for production of documents, and requests for admission.

On May 4, Westerfield filed an answer and affirmative defenses. Westerfield denied the collision with Cook caused Cook's car to hit LaMonte's car. Westerfield asserted as an affirmative defense that LaMonte was negligent and any injuries or damages were caused by "some other person."

On May 15, Cook sent LaMonte's attorney responses to the requests for admission. In response to the request to admit that "because Richard Westerfield's vehicle collided with your vehicle, your vehicle collided with the rear end of Rebecca LaMonte's vehicle on southbound I-405 at or near the I-5 southbound exit ramp in King

3

County, Washington," Cook answered, "Admit."

On May 31, LaMonte's attorney sent a letter to Westerfield's attorney concerning the outstanding response to interrogatories. The letter states that "this office forwarded interrogatories to your offices, on behalf of the Defendants Westerfield, on or about April 4, 2000," and asks for "an approximate date of when we can expect to receive the answers." The letter makes no mention of the requests for admission.

Westerfield responded to the interrogatories three days later. In response to the interrogatory asking Westerfield to describe the collision, Westerfield states that after Cook rear-ended LaMonte, his car "ran into the rear of the Cook vehicle."

**INTERROGATORY NO. 4:**
Describe in detail the collision at issue in this case:
      a.     When and where the collision occurred;
      b.     What happened, and how;
      c.     Who was involved in the accident;
      d.     Why the accident happened;
      e.     Who, if anyone, appeared hurt in any way:
**ANSWER:**
      a.     May 30, 1997, at approximately 12:30 p.m. I-405 south, 100 feet before the I-5 onramp in Tukwila, King County, Washington.
      b.     It had been sunny, and at the time of the accident it was raining heavily. There were four and possibly five vehicles directly involved. While crossing over southbound I-5, all vehicles were in lane 1. There was an unknown driver, who I believe was in a red van, who was first in line, and who I later learned had been in a prior accident, and who was stopped. The plaintiff stopped abruptly behind the red van, and Mr. Cook apparently struck the rear of the plaintiff's vehicle, the vehicle in front of me swerved, and at that point, I saw what had developed, was unable to stop my vehicle, and ran into the rear of the Cook vehicle. I believe the Cook vehicle was a Volvo station wagon.
      c.     The parties hereto, and the unidentified driver of the red van described above.
      d.     Because of the accident involving the red van, and the drivers behind it coming to an abrupt stop.
      e.     No one.

In March 2001, Cook and LaMonte entered into a covenant judgment settlement agreement. Cook agreed to pay policy limits of $25,000 and LaMonte agreed to not execute on any judgment against Cook beyond policy limits. On May 4, the court entered an order determining the $25,000 settlement was reasonable and "that any potential claims for contribution against Mr. Cook are hereby discharged pursuant to RCW 4.22.060(2)."[1] On May 7, the court entered an amended order scheduling the trial to begin on February 25, 2002.

## February 2002 Trial Date

Cook was hospitalized in 2001 for a heart condition and was on dialysis for kidney failure. The parties took a perpetuation deposition of Cook on May 3, 2001 and December 26, 2001.

Westerfield retained accident reconstruction expert Richard Chapman to testify at trial. Chapman issued his report on December 11, 2001. Chapman's report states, "There is no obvious physical evidence to support a conclusion that the Cook Volvo struck the rear of the LaMonte Chrysler two separate times." According to Chapman, when Cook's vehicle hit LaMonte's car, Cook was steering to his left and "the right half of the front of the Cook vehicle . . . made contact with the left half of the rear of the LaMonte vehicle." Chapman concludes Westerfield was travelling at about 10 miles per hour in his Geo Metro when he struck Cook's car, and that the damage to the rear of LaMonte's car reflects an impact at a much greater speed. Chapman states that

---

[1] The terms of the settlement state, in pertinent part:

- Upon court approval of the proposed settlement, my client's carrier will pay $25,000 (USAA policy limits) to you and your clients' trust account.

. . . .

- Your client will execute a satisfaction of the judgment promptly upon entry of a final judgment in the action (e.g., following the jury trial).

5

Westerfield's front bumper hit the rear bumper of Cook's Volvo and the impact between Cook's car and LaMonte's car caused "far more severe" damage to the front of Cook's vehicle than the damage from the rear impact with Westerfield.

Chapman's report states, in pertinent part:

> 5. The damage on the front of the Westerfield Geo is consistent with an impact speed of approximately 10 miles per hour when that Geo struck the rear of the Cook Volvo (see Photo 5 & 6). A 1989 Geo Metro striking the rear of a stopped 1984 Volvo station[ ]wagon at a speed of approximately 10 miles per hour would result in the Volvo being accelerated to a speed of approximately 5 miles per hour or less. The Volvo would then have moved forward and struck the rear of Ms. LaMonte's stopped Chrysler at a speed of 5 miles per hour o[r] less. The damage actually sustained by the rear of Ms. LaMonte's vehicle and the front of Mr. Cook's vehicle certainly reflects an impact speed much greater than 5 miles per hour for the Volvo when it struck the rear of the stopped Chrysler.

On "a more likely than not basis," Chapman states that Cook's Volvo rear-ended LaMonte's Chrysler "only once" and Westerfield's car rear-ended Cook after Cook's car came to a stop at an angle. The report states, in pertinent part:

> 1. The Volvo driven by Mr. Cook struck the rear of the Chrysler driven by Ms. LaMonte only once after Mr. Cook was not able to stop his Volvo once Mr. Cook was able to first see Ms. LaMonte's vehicle stopped in his traffic lane.
> 2. Mr. Westerfield's Geo struck the rear of Mr. Cook's Volvo after the Volvo had come to a stop, angled to the left within the right traffic lane. Damage to the three involved vehicles does not indicate that this impact was sufficient to accelerate the Volvo into the Chrysler with sufficient speed to cause the damage on the front of the Cook Volvo and the rear of the LaMonte Chrysler.

In December 2001, Westerfield filed a disclosure of possible primary witnesses and identified Chapman as an accident reconstruction expert. In February 2002, Westerfield and LaMonte filed a "Joint Statement of Evidence." LaMonte identified accident reconstruction expert Bryan Jorgensen and approximately 10 medical experts.

6

Westerfield identified Chapman and four medical experts.

Pretrial, Westerfield filed a motion to exclude expert testimony on fibromyalgia. The court granted the motion. The parties agreed to stay the trial pending the decision in an appeal in another case concerning expert testimony on fibromyalgia.

The court entered a number of orders continuing the trial date. Approximately 10 years later, the court scheduled the trial to begin on May 14, 2012.

May 14, 2012 Trial Date

On March 9, 2012, LaMonte's attorney contacted Westerfield's attorney about the requests for admission served on April 8, 2000. Westerfield's attorney said that the firm did not have "proof of service of Defendant Westerfield's admissions/denials to the requested [requests for admission]." LaMonte refused to give Westerfield the opportunity to respond to the requests for admission.

The requests for admission ask Westerfield to admit or deny that nothing obstructed his "view of the stopped southbound traffic" on I-405; that "there were no emergent or unusual circumstances at the time of the collision;" that LaMonte was "in no way responsible, nor negligent in any manner;" that the collision with Cook's vehicle caused Cook's car to collide with LaMonte's vehicle; and that Westerfield was "liable for the injuries sustained by Rebecca LaMonte," including neck and back injuries as well as fibromyalgia.[2]

---

[2] The requests for admission state, in pertinent part:

**REQUEST FOR ADMISSION NO. 8:** Please admit or deny that there was nothing obstructing your view of the stopped southbound traffic on southbound I-405 at or near the I-5 southbound exit ramp in King County, Washington on May 30, 1997 at approximately 12:30 p.m.

. . . .

**REQUEST FOR ADMISSION NO[.] 9:** Please admit or deny that there was nothing obstructing your view of Sherman Cook's stopped vehicle on southbound I-405 at

or near the I-5 southbound exit ramp in King County, Washington, on May 30, 1997, at approximately 12:30p.m.[ ]

**REQUEST FOR ADMISSION NO[.] 10:** Please admit or deny that there was nothing obstructing your view of Rebecca LaMonte's stopped vehicle on southbound I-405 at or near the I-5 southbound exit ramp in King County, Washington, on May 30, 1997, at approximately 12:30p.m.[ ]

**REQUEST FOR ADMISSION NO[.] 11:** Please admit or deny that on May 30, 1997, at approximately 12:30[ ]p.m., you failed to stop for stopped traffic on southbound I-405 at or near the I-5 southbound exit ramp in King County, Washington.

**REQUEST FOR ADMISSION NO. 12:** Please admit or deny that on May 30, 1997, at approximately 12:30 p.m., your vehicle struck Sherman Cook's vehicle prior to his impact with Rebecca LaMonte's vehicle on southbound I-405 at or near the I-5 southbound exit ramp in King County, Washington.

**REQUEST FOR ADMISSION NO. 14:** Please admit or deny that on May 30, 1997, at approximately 12:30[ ]p.m., because your vehicle collided with Sherman Cook's vehicle, Sherman Cook's vehicle collided with the rear end of Rebecca LaMonte's vehicle on southbound I-405 at or near the I-5 southbound exit ramp in King County, Washington.

**REQUEST FOR ADMISSION NO. 15:** Please admit or deny that on May 30, 1997, at approximately 12:30 p.m., prior to Sherman Cook's vehicle striking Rebecca LaMonte's vehicle, your vehicle struck Sherman Cook's vehicle on southbound I-405 at or near the I-5 southbound exit ramp in King County, Washington

**REQUEST FOR ADMISSION [NO.] 16:** Please admit or deny that there were no emergent or unusual circumstances at the time of the collision between your vehicle and Sherman Cook's vehicle on May 30, 1997, at approximately 12:30 p.m.

**REQUEST FOR ADMISSION NO. 18:** Please admit or deny that on May 30, 1997, at approximately 12:30 p.m., Rebecca LaMonte sustained injuries as a result of the subject collision on southbound I-405 at or near the I-5 southbound exit ramp in King County, Washington.

**REQUEST FOR ADMISSION NO. 19:** Please admit or deny that you are liable for the injuries sustained by Rebecca LaMonte as a result of the rear end collision between Sherman Cook's vehicle and your vehicle on May 30, 1997, at approximately 12:30 p.m.

**REQUEST FOR ADMISSION NO. 20:** Please admit or deny that as a result of the rear end collision between Sherman Cook's vehicle and Rebecca LaMonte's vehicle on May 30, 1997, at approximately 12:30 p.m., she sustained injuries to her neck and/or back.

**REQUEST FOR ADMISSION NO. 21:** Please admit or deny that as a result of the rear end collision between Sherman Cook's vehicle and Rebecca LaMonte's vehicle on May 30, 1997, at approximately 12:30 p.m., she developed Fibromyalgia.

**REQUEST FOR ADMISSION NO. 22:** Please admit or deny that Rebecca LaMonte was in no way responsible, nor negligent in any manner, for the rear end collision in which you were involved on May 30, 1997, at approximately 12:30 p.m.

On March 14, LaMonte filed "Plaintiff's Motion to Deem Requests for Admission Propounded to Defendants Westerfield Admitted." In support, LaMonte's attorney submitted a copy of the proof of service and requests for admission. The declaration of service states that on April 8, 2000, Westerfield was served at his residence with a copy of the summons and amended complaint, order setting civil case schedule, interrogatories, requests for production of documents, and requests for admission.

Westerfield opposed the motion to deem the requests for admission admitted. Westerfield submitted a declaration from his attorney stating that the first time he received any notice "that Requests for Admissions directed to Mr. Westerfield existed" was on March 9, 2012 when LaMonte's attorney called him to ask "whether or not we could show proof of service of answers to plaintiff's Requests for Admission, which I was informed were served on April 8, 2000." The attorney states that after conducting "an extensive and diligent search of the files and records in the undersigned's office," he "found no evidence or indication that [the insurance company or] our office ever received a copy of the Requests for Admission Propounded to Defendant Westerfield."

Westerfield argued LaMonte waived her right to rely on the admissions. Westerfield argued that the court should permit withdrawal of the admissions under CR 36(b):

> Throughout the entirety of these proceedings, the attorneys for plaintiff have conducted themselves as if the April 4, 2000 request for admissions never existed but now seek to impose a technical default on the defendants some 12 years later.

Westerfield pointed out that he unequivocally denied liability in his answer to the amended complaint. Westerfield also argued that LaMonte's decision to retain accident reconstruction expert Bryan Jorgensen and his 2002 report demonstrated liability was

disputed:

> Clearly, by January of 2002, both plaintiff and defendant Westerfield had established that there were significant conflicts with regard as to how the accident occurred, and both parties had retained expert witnesses to advocate for both party's positions.

In addition, Westerfield submitted a copy of the May 31, 2000 letter from LaMonte's attorney addressing the outstanding answers to interrogatories but making no reference to requests for admission. The May 31 letter from LaMonte's attorney states:

> As you may recall, this office forwarded interrogatories to your offices, on behalf of the Defendants Westerfield, on or about April 4, 2000. To date, we have not received the Defendants' answers to those interrogatories. Would you please provide me with a status of the answers to the interrogatories and an approximate date of when we can expect to receive the answers.

Westerfield also notes that while "Request for Admission No. 21" asked Westerfield to admit that LaMonte developed fibromyalgia as a result of the collision, during the 2009 Frye[3] hearing on the causation of fibromyalgia, "plaintiff was completely silent as to Request for Admission No. 21."

With the exception of the request that Westerfield admit he was liable for LaMonte's injuries and that as a result of the collision she developed fibromyalgia,[4] the court granted LaMonte's motion to deem the requests for admission admitted.

On May 7, LaMonte and Westerfield filed an "Amended Joint Statement of Evidence." LaMonte identified accident reconstruction experts Jorgensen and Ward

---

[3] Frye v. United States, 293 F. 1013, 1014 (D.C. Cir. 1923) (evidence derived from a scientific theory or principle is admissible only if the theory or principle has achieved general acceptance in the relevant scientific community).

[4] **REQUEST FOR ADMISSION NO. 19** states that "you are liable for the injuries sustained by Rebecca LaMonte as a result of the rear end collision between Sherman Cook's vehicle and your vehicle on May 30, 1997." **REQUEST FOR ADMISSION NO. 21** states that "as a result of the rear end collision . . . , [LaMonte] developed Fibromyalgia."

10

Bruington. Westerfield identified accident reconstruction expert Charles Lewis.[5] On May 7, Westerfield also filed a "Motion to Withdraw or Amend Plaintiff's Requests for Admissions to Defendants Westerfield Deemed Admitted." Westerfield argued the failure to allow withdrawal of the admissions would deny Westerfield the opportunity to present a defense on the merits and LaMonte had not established prejudice. Westerfield's attorney argued, in pertinent part:

> From the inception of this case, the subject matter of these Requests has been denied or challenged, as the claims against Mr. Westerfield have been defended. The so-called two impact theory was alleged in plaintiff's Complaint and was denied in defendants' Answer. Mr. Westerfield answered interrogatories that described the sequence of events involved in the accident, to include the swerving of the van in front of him which blocked his view of Cook's and plaintiff's vehicles. Westerfield retained and disclosed accident reconstructionist Richard Chapman in 2001, who opined that the physical evidence did not ". . . support a conclusion that the Cook Volvo struck the rear of the LaMonte Chrysler two separate times." Understanding that how this accident occurred was hotly contested and very much at issue, plaintiff, through her attorneys, retained and disclosed accident reconstruction expert Bryan Jorgensen to challenge the opinions offered by Mr. Chapman.
> In late 2011, plaintiff disclosed accident reconstruction expert Ward Bruington. In the disclosure for Mr. Bruington, it was his opinion that Mr. Cook's vehicle originally impacted Ms. LaMonte's vehicle, and that "[i]t is then likely that Mr. Westerfield rear ended Mr. Cook's vehicle driving the Cook vehicle back into the LaMonte vehicle. . . ." It is further worth noting that even in plaintiff'[s] Second Amended Plaintiff's Witness and Exhibit List, plaintiff still includes Mr. Bruington and Mr. Jorgensen as witnesses to be called at trial. For the 12 some years that this case has been pending, the details as to how this accident occurred, and whether the actions of Mr. Westerfield has been hotly contested, and plaintiff has proceeded throughout the entirety of this case as if her April 4, 2000 Requests for Admissions never existed.[6]

While Westerfield's motion to withdraw or amend the requests for admission was pending, the case was reassigned to another judge for trial. On May 15, the judge heard argument on the pending motion. The court granted Westerfield's motion to

---

[5] Westerfield's previous accident reconstruction expert Chapman died in November 2011.

[6] (Footnotes omitted) (alterations in original).

11

withdraw the admissions by default. The court expressly found that LaMonte had not established prejudice.[7] The court also entered an order dismissing Cook as a party to the lawsuit.

At the beginning of the trial, LaMonte argued she was entitled to use the Cook admissions during opening statement and to rebut the testimony of the defense accident reconstruction expert. Westerfield argued the admissions were inadmissible because Cook was no longer a party to the action. The court ruled that the Cook admissions were hearsay and LaMonte could not refer to the admissions during opening statement or in her case in chief.

During the three-week jury trial, more than 20 witnesses testified including LaMonte, Westerfield, and accident reconstruction experts Jorgensen, Bruington, and Lewis.

LaMonte testified that as she was approaching the I-5 overpass, she put on the brakes and stopped after she suddenly saw "brake lights, all the brake lights were stopping in front of me." LaMonte said that she "was hit from behind, the air bag deployed, I was hit again, and the last thing I remember is my head falling into the deflated air bag." On cross-examination, LaMonte admitted that in a 1997 recorded interview, she said that she could not be sure whether there were two impacts.

Before calling accident reconstruction expert Jorgensen, LaMonte argued she was entitled to introduce the Cook admissions because Jorgensen relied on the

---

[7] The court stated, in pertinent part:

I have significant concerns about the appellate issues at play here, and I have a significant concern whether Judge McCullough's decision will be reversed for abuse of discretion in failing to have an adequate record of prejudice to the plaintiff . . . . I think at this point it would be an abuse of discretion for me not to consider the prejudice issue and what I think is an evidentiary deficiency in terms of the lack of prejudice.

admissions in forming his opinion.

The court ruled that LaMonte's expert could testify about the Cook admissions. The court instructed the jury that the admissions were Cook's and not Westerfield's.

Jorgensen testified that in his opinion, "Westerfield strikes Cook and Cook strikes LaMonte again, but on the corner this time." LaMonte's attorney displayed the Cook admissions and asked Jorgensen to read the admissions and to explain the significance of the admissions. Jorgensen testified that he relied on Cook's written statement to the police and Cook's response to the requests for admission. Jorgensen testified, in pertinent part:

> [B]ecause Richard Westerfield's vehicle collided with [Cook's] vehicle, [Cook's] vehicle collided with the rear of the LaMonte vehicle. And that was admitted. And that -- that was important as a cause and effect relationship to the accident event.

On cross-examination, Jorgensen admitted he did not review Cook's response to the requests for admission until two weeks before trial.

LaMonte's other accident reconstruction expert Bruington also testified that after Westerfield's car hit Cook, Cook's car hit LaMonte's car "a second time." Bruington testified, in pertinent part:

> [Mr. Cook] can't stop in time and crashes into the back of Ms. LaMonte's Chrysler.
>    And then behind Mr. Cook there's a mention of a van. This van isn't involved in the crash. It -- it turns off and gets to the shoulder of the road. And behind that van is Mr. Westerfield driving a Geo. And then he crashes into Mr. Cook's Volvo. And that causes Mr. Cook's Volvo to crash into Ms. LaMonte's Chrysler a second time.

Westerfield testified that on the day of the accident, there was heavy traffic and the "road spray was really bad." Westerfield said that when his car hit Cook's, "it shoved [Cook] about three feet, maybe, into the I'll call it the left lane, and at the same

time [Cook] accelerated, continuing on in the left lane."

Defense accident reconstruction expert Lewis testified that the impact of Westerfield's car did not cause Cook's car to hit LaMonte's car a second time. Lewis testified, in pertinent part:

> The 1,600 pound Geo Metro that Mr. Westerfield was operating then collided with the rear of [Cook's] Volvo and shoved it into the oncoming lane partially . . . .
> The Geo Metro did not drive the Volvo into the rear of the LaMonte vehicle and did not cause a second impact between the Volvo and [LaMonte's] Chrysler.

During cross-examination, Lewis testified that in reaching his conclusion, he relied in part on the testimony Cook gave in the perpetuation deposition that his car ended up on the side of the road.

Before redirect, Westerfield asked for permission to play excerpts from the videotaped perpetration deposition of Cook. After reviewing the videotape of the deposition, the court ruled Westerfield could play excerpts of the perpetration deposition. The court ruled the videotaped deposition was "clearly" a perpetuation deposition and Cook's deposition testimony was not contrary to his admissions—Cook "just says he can't remember, which is different than it being contrary" to the admission. The court also ruled that during the cross-examination of Lewis, LaMonte had opened the door to the deposition testimony.

Westerfield played excerpts of the videotaped perpetration deposition during the redirect of Lewis. In the first deposition, Cook states he is not sure whether Westerfield hit his car before or after he hit LaMonte.

> QUESTION: Do you know whether or not Mr. Westerfield struck the rear of your car before or after you initially made impact with the LaMonte vehicle?

ANSWER: I have no idea. It was too quick, too fast to -- I -- I have no idea.

In the second deposition, Cook stated he did not know whether Westerfield's car knocked him into LaMonte's car. Cook testified, "I don't remember the sequence."

The written jury instructions reiterate that the answers to the requests for admission of nonparty Cook do not bind Westerfield. Jury "Instruction No. 20" states:

> Non-party entity Sherman Cook's Answers to Requests for Admission served by plaintiff have been admitted for a limited purpose. These answers may be considered by you for the limited purpose of forming the basis of the experts' opinions, and for no other purpose. These answers are binding on Sherman Cook, but defendant Westerfield is not bound by Cook's answers.

Jury "Instruction No. 18" states that if the jury finds more than one entity negligent, it should determine what percentage of negligence was attributable to each entity. The instruction states that entities may include Westerfield and nonparty Cook.

Jury Instruction No. 18 states:

> If you find that more than one entity was negligent, you must determine what percentage of the total negligence is attributable to each entity that proximately caused the injury to the plaintiff. The Court will provide you with a special verdict form for this purpose. Your answers to the questions in the special verdict form will furnish the basis by which the court will apportion damages, if any.
> Entities may include the defendant Richard Westerfield and non-party Sherman Cook.

The jury found Westerfield and Cook were negligent but that only nonparty Cook's negligence was a proximate cause of the injury to LaMonte.[8] The court entered a judgment on the verdict dismissing the claims against Westerfield with prejudice.

## ANALYSIS

LaMonte argues the trial court erred by (1) granting Westerfield's motion to withdraw the admissions by default under CR 36(b), (2) ruling Cook's admissions were hearsay, and (3) allowing Westerfield to introduce into evidence testimony from the perpetuation deposition of Cook.

### 1. Withdrawal of Admissions

LaMonte asserts the court abused its discretion in allowing Westerfield to withdraw the admissions under CR 36(b).[9] We review the trial court's decision on a motion to withdraw or amend admissions under CR 36 for an abuse of discretion. Santos v. Dean, 96 Wn. App. 849, 857-58, 982 P.2d 632 (1999). A trial court abuses its

---

[8] The special verdict form states, in pertinent part:
We, the jury, answer the questions submitted by the court as follows:
QUESTION NO. 1: Were any of the following negligent?
(Answer "yes" or "no" after the name of the defendant and each entity not party to this action.)

| Answer: | Yes | No |
|---|---|---|
| Defendant, Richard Westerfield | X | ___ |
| Non-Party, Sherman Cook | X | ___ |

(If you answer Question No. 1 "no" as to the defendant, sign and return this verdict. If you answer Question No. 1 "yes" as to the defendant, then answer Question No. 2.)
QUESTION NO. 2: Was such negligence a proximate cause of injury to the plaintiff?
(Answer "yes" or "no" after the name of the defendant and the name of each entity, if any, found negligent by you in Question No. 1.)

| Answer: | Yes | No |
|---|---|---|
| Defendant, Richard Westerfield | ___ | X |
| Non-Party, Sherman Cook | X | ___ |

[9] Preliminarily, LaMonte contends the trial judge did not have the authority to reconsider the decision granting her motion to deem admitted the requests for admission propounded to Westerfield. We disagree. A trial judge has the authority to reconsider a ruling made by another judge. In re Estate of Jones, 170 Wn. App. 594, 605-06, 287 P.3d 610 (2012); see also Adcox v. Children's Orthopedic Hosp. & Med. Ctr., 123 Wn.2d 15, 37, 864 P.2d 921 (1993). The record establishes that Westerfield's motion to withdraw or amend the requests for admission was pending when the case was transferred for trial.

discretion when its decision is manifestly unreasonable or is based on untenable grounds. State ex rel. Carroll v. Junker, 79 Wn.2d 12, 26, 482 P.2d 775 (1971).

Requests for admission are deemed conclusively established under CR 36(b) unless the court permits amendment or withdrawal of the admission. CR 36(b) states:

> **Effect of Admission.** Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission. Subject to the provisions of rule 16 governing amendment of a pretrial order, the court may permit withdrawal or amendment when the presentation of the merits of the action will be subserved thereby and the party who obtained the admission fails to satisfy the court that withdrawal or amendment will prejudice him in maintaining his action or defense on the merits. Any admission made by a party under this rule is for the purpose of the pending action only and is not an admission by him for any other purpose nor may it be used against him in any other proceeding.

The purpose of CR 36 is to " 'obtain admission of facts as to which there is no real dispute and which the adverse party can admit cleanly, without qualifications.' " Reid Sand & Gravel, Inc. v. Bellevue Props., 7 Wn. App. 701, 704, 502 P.2d 480 (1972) (quoting Weyerhaeuser Sales Co. v. Holden, 32 Wn.2d 714, 726, 203 P.2d 685 (1949)). " 'Accordingly, requests for admissions as to central facts in dispute are beyond the proper scope of the rule.' " Reid, 7 Wn. App. at 704 (quoting Pickens v. Equitable Life Assurance Soc'y of the U.S., 413 F.2d 1390, 1393 (5th Cir. 1969)).

CR 36(b) permits the court to exercise its discretion to grant a motion to withdraw admissions only if "presentation of the merits of the action will be subserved," and the party who obtained the admission fails to show withdrawal will result in prejudice "in maintaining his action or defense on the merits." Hadley v. United States, 45 F.3d 345, 1348 (9th Cir. 1995); Santos, 96 Wn. App. at 858-59; see also Asea, Inc. v. S. Pac.

Transp. Co., 669 F.2d 1242, 1248 (9th Cir. 1981).[10]

The first prong of the test is met when upholding the admissions would "practically eliminate any presentation of the merits of the case." Hadley, 45 F.3d at 1348. LaMonte concedes the first prong is met. We accept the concession as well taken. The admissions are contrary to the position Westerfield steadfastly maintained since 2000.

LaMonte has the burden to establish the prejudice prong of the test. Hadley, 45 F.3d at 1348. "The prejudice contemplated by Rule 36(b) is 'not simply that the party who obtained the admission will now have to convince the factfinder of its truth.' " Hadley, 45 F.3d at 1348 (quoting Brook Vill. N. Assocs. v. Gen. Elec. Co., 686 F.2d 66, 70 (1st Cir. 1982)).[11] "The prejudice contemplated by Rule 36(b) 'relates to the difficulty a party may face in proving its case'[,] 'e.g., caused by the unavailability of key witnesses, because of the sudden need to obtain evidence' with respect to the questions previously deemed admitted.' " Santos, 96 Wn. App. at 859, 860 (quoting Fed. Deposit Ins. Corp. v. Prusia, 18 F.3d 637, 640 (8th Cir. 1994); Hadley, 45 F.3d at 1348).

" 'The necessity of having to convince the trier of fact of the truth of a matter erroneously admitted is not sufficient.' " Santos, 96 Wn. App. at 859 (quoting Prusia, 18 F.3d at 640). Under CR 36(b), the trial court must "focus on the prejudice that the nonmoving party would suffer at trial." Conlon v. United States, 474 F.3d 616, 623 (9th

---

[10] In construing CR 36, the court of appeals has looked to federal case law as persuasive authority. Santos, 96 Wn. App. at 859.

[11] We note Hadley misquotes Brook Village; however, the error does not change the meaning of the quote. The correct Brook Village language states, "The prejudice contemplated by the Rule is not simply that the party who initially obtained the admission will now have to convince the factfinder of its truth." Brook Vill., 686 F.2d at 70 (emphasis added).

Cir. 2007).[12]

Here, the court ruled that LaMonte did not establish prejudice under CR 36(b).

The court ruled, in pertinent part:

> [T]he plaintiff has been on notice for years about the defense theory of the case and the plaintiff is represented by two able counsel, who are obviously prepared to rebut the defense case.
>
> So it's really hard to say that the plaintiff is prejudiced by having to present their case . . . because they're fully prepared to do that.
>
> . . . .
>
> . . . I am a little concerned about the kind of the clear policy in the appellate case law favoring resolution on the merits as opposed to -- and it would be a completely different matter if somebody had affirmatively answered X . . . and then they were stuck with the admission.
>
> But what we have here is a request for admission which apparently wasn't forwarded to counsel, then went unanswered. So it was deemed admitted, a significant period of time went by. . . .
>
> Clearly there was originally a denial on several bases in the original answer and actually motion practice and multiple instances in which the plaintiff was put on notice that liability was contested on various grounds.

The record supports the determination that LaMonte did not meet her burden of showing that withdrawal of the default admissions resulted in " 'the unavailability of key witnesses' " or the " 'sudden need to obtain evidence with respect to the questions previously deemed admitted.' " Santos, 96 Wn. App. at 859 (quoting Hadley, 45 F.3d at 1348). When the case was initially scheduled for trial on February 25, 2002, LaMonte identified an accident reconstruction expert witness to testify at trial. In the Amended Joint Statement of Evidence filed one week before the scheduled trial date in May 2012, LaMonte identified accident reconstruction experts Bruington and Jorgensen.

Nonetheless, LaMonte argues that because the motion to withdraw the admissions was made at the beginning of trial, the court erred in granting Westerfield's motion to withdraw the default admissions under CR 36(b). LaMonte relies on Brook

---

[12] (Emphasis added.)

<u>Village</u> to argue the court erred in failing to evaluate the prejudice prong under CR 36(b) under a manifest injustice standard. <u>Brook Village</u> is distinguishable.

In <u>Brook Village</u>, plaintiff Brook Village filed a lawsuit against General Electric (GE) alleging modular housing units were defective, and propounded requests for admission to GE. <u>Brook Vill.</u>, 686 F.2d at 68. GE responded to the requests for admission nine months later. Brook Village immediately moved to strike the responses and deem as admitted the requests for admission. The court granted the motion. <u>Brook Vill.</u>, 686 F.2d at 69. GE filed repeated motions asking the court to reconsider and permit withdrawal of the admissions. The court denied the motions for reconsideration and included the admission in the pretrial Federal Rule of Civil Procedure (FRCP) 16[13] order. <u>Brook Vill.</u>, 686 F.2d at 69, 71.

At the conclusion of the bench trial, the court found GE liable and assessed damages against GE. However, the court did not give conclusive effect to the admissions on damages. <u>Brook Vill.</u>, 686 F.2d at 69-70. Instead, the court relied on the testimony at trial. <u>Brook Vill.</u>, 686 F.2d at 69.

On appeal, the First Circuit reversed, holding the trial court abused its discretion by ignoring the admissions. <u>Brook Vill.</u>, 686 F.2d at 73-74. The court held, "[A] party who obtains an admission by default does not waive his right to rely thereon by presenting evidence at trial that overlaps the matters controlled by the admission." <u>Brook Vill.</u>, 686 F.2d at 72. The court concluded that because the admissions were part of the FRCP 16 pretrial order, the trial court could amend the pretrial order only to prevent manifest injustice; "a more restrictive standard" governs "a request to avoid the

---

[13] FRCP 16(e) provides, in pertinent part: "The court may modify the order issued after a final pretrial conference only to prevent manifest injustice."

effect of an admission once trial [begins]." Brook Vill., 686 F.2d at 71.

Here, unlike in Brook Village, LaMonte did not promptly file a motion to deem the requests for admission admitted after serving them on Westerfield in April 2000. Instead, unlike in Brook Village, LaMonte never mentioned the requests for admissions until 12 years later before the trial in May 2012. Further, the court granted the motion to withdraw the admissions by default under CR 36(b) before opening statements and the presentation of evidence. See Hadley, 45 F.3d at 1348 ("Courts are more likely to find prejudice when the motion for withdrawal is made in the middle of trial."); 999 v. C.I.T. Corp., 776 F.2d 866, 869-70 (9th Cir. 1985) (affirming denial of motion to withdraw admissions in "the middle of trial" when plaintiff had "nearly rested its case" where plaintiff relied heavily on admission and withdrawal did not subserve merits); Pedroza v. Lomas Auto Mall, Inc., 258 F.R.D. 453, 467 (D.N.M. 2009) (plaintiffs met burden of establishing that withdrawal would prejudice them because parties had longstanding understanding that subject matter of admission was undisputed).

But even if a manifest injustice standard applied, the record supports the decision to allow Westerfield to withdraw the default admissions under CR 36(b). There is no dispute that Westerfield consistently denied liability, the parties engaged in lengthy discovery, and the parties retained expert witnesses to testify on the contested issues of liability and damages.

2. Cook Admissions

LaMonte also argues the court erred by ruling the Cook admissions were hearsay and precluding her from referring to the admissions in her opening statement. This court reviews a trial court's evidentiary decision for abuse of discretion. Sintra, Inc.

v. City of Seattle, 131 Wn.2d 640, 662-63, 935 P.2d 555 (1997). Abuse of discretion occurs only when no reasonable person would take the view adopted by the trial court. Crescent Harbor Water Co. v. Lyseng, 51 Wn. App. 337, 344, 753 P.2d 555 (1988). Admissions under CR 36 are subject to the rules of evidence. Walsh v. McCain Foods Ltd., 81 F.3d 722, 726 (7th Cir. 1996) (citing 8A CHARLES ALAN WRIGHT, ET. AL., FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2264, at 571-72 (1994)); see also 3A KARL B. TEGLAND, WASHINGTON PRACTICE: RULES PRACTICE CR 36, at 832 (6th ed. 2013).

ER 801(d)(2) is an exception to the hearsay rule that allows the introduction of admissions of a party opponent. Walsh, 81 F.3d at 726 (quoting 8A WRIGHT, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2264, at 571-72 (" 'It is only when the [CR 36] admission is offered against the party who made it that it comes within the exception to the hearsay rule for admissions of a party opponent.' ")). Because Cook was not a party at the time of trial, the hearsay exception for admissions of a party opponent under ER 801(d)(2) did not apply. See 5B KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 801.34, at 387 (5th ed. 2007) (ER 801(d)(2) "does not authorize the introduction of statements by, or on behalf of, someone who is not a party to the present proceeding."); 5B TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 801.50, at 422 ("If a case begins as a multiparty case, but one of the parties is removed from the case by dismissal, . . . the admissions of the party who has been removed are inadmissible against the party who remains in the case."). The court did not err by ruling the admissions of nonparty Cook were hearsay.

In any event, the trial court allowed LaMonte's accident reconstruction expert Jorgensen to testify about the Cook admissions. During cross-examination of

Westerfield's accident reconstruction expert, LaMonte also asked about the Cook admissions and referred to the Cook admissions in closing argument. During closing argument, LaMonte argued that Cook admitted there was a second impact to her car: "[Y]ou have Mr. Cook's admission that 'I was knocked into LaMonte because Westerfield rear-ended me.'" In rebuttal, LaMonte told the jury, "I want to remind you that this is Mr. Cook's admission that [']because Richard Westerfield[ ]collided with [Cook's] vehicle -- [Cook's] vehicle collided with the rear-end of Becky LaMonte's vehicle.[' ]"

### 3. Admission of Perpetuation Deposition Testimony

LaMonte contends the court erred by permitting Westerfield to introduce excerpts from the perpetuation deposition of Cook into evidence. LaMonte asserts the deposition testimony contradicts the responses to the requests for admission.[14]

After viewing videotapes of the perpetuation deposition, the court concluded the deposition testimony did not contradict Cook's admissions.[15] The record supports the court's determination. In response to the requests for admission, Cook admitted that "because Richard Westerfield's vehicle collided with [his] vehicle, [his] vehicle collided with the rear end of Rebecca LaMonte's vehicle." In his deposition, Cook states that he could not be sure about the sequence of the events of the accident and that his car came to a rest on the left-hand shoulder of the road.

---

[14] We deny the motion to supplement the record on appeal with the videotapes of the Cook deposition. The court may direct transmittal of additional clerk's papers and exhibits "[i]f the record is not sufficiently complete to permit a decision on the merits of the issues presented for review." RAP 9.10. Here, the report of proceedings contains a transcript of the deposition.

[15] Under CR 32(a)(3), "[t]he deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds . . . that the witness is dead." ER 804(b)(1) provides that the hearsay rule is inapplicable to deposition testimony taken in the course of the same proceeding if the declarant is unavailable. A declarant is unavailable if he is dead. ER 804(a)(4).

The record also supports the ruling that LaMonte opened the door to introduction of the perpetuation deposition testimony. See State v. Warren, 134 Wn. App. 44, 64-65, 138 P.3d 1081 (2006). For example, during the cross-examination of accident reconstruction expert Lewis, LaMonte asked whether Lewis relied on Cook's deposition testimony:

> Q. . . . [W]e have very little evidence as to where the cars went. Isn't that true?
> A. I believe just the testimony of the people who were in the vehicles.
> Q. Right. And very little evidence as to what really happened to the vehicles after impact. Isn't that fair?
> A. No physical evidence. Just Mr. Cook's description of his final position on the opposite shoulder.
>
> . . . .
> Q. Okay. Would it be fair to say that in your simulation you did not consider the admission, ["]please admit or deny that on May 30, 1997["] -- and this is admission to Mr. Cook – ["]at approximately 12:30 p.m., because Richard Westerfield's vehicle collided with your vehicle,["] being Mr. Cook's vehicle, ["]your vehicle collided with the rear end of Rebecca LaMonte's vehicle.["] You didn't consider that, correct?
> A. I consider everything. I consider all testimony.
> Q. You ignored this, though --
> A. No.
> Q. -- for your simulation?
> A. No. I don't ignore anybody's testimony. I try to see if it fits the physical facts and then I come up with my analysis. And if this jury believes that Mr. Cook has more information and, you know, if this jury believes that declaration is accurate, then they will find accordingly.
>
> . . . .
> Q. In doing your simulations --
> A. Yes.
> Q. -- you ran your different scenarios?
> A. Yes.
> Q. You did not run a scenario that addressed Mr. Bruington's set of facts?
> A. No. He came up with that on his own. I didn't know it existed until I read his deposition and saw his simulation.
> Q. Right. But you did know that Mr. Cook in his admission had said that he was hit by the Geo into the LaMonte vehicle?
> A. I did.

In sum, we conclude the trial court did not abuse its discretion by allowing withdrawal of the admissions by default under CR 36(b), ruling the admissions of nonparty Cook were inadmissible, and allowing Westerfield to introduce excerpts of the perpetuation deposition, and affirm.

WE CONCUR: