[Cite as *O'Brien v. Phillips*, 2015-Ohio-3901.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Ron O'Brien, Prosecuting Attorney, | : | |
| Plaintiff-Appellee, | : | |
| | | No. 14AP-1026 |
| v. | : | (C.P.C. No. 13CV-10431) |
| Timothy P. Phillips, | : | (REGULAR CALENDAR) |
| Defendant-Appellant. | : | |

D E C I S I O N

Rendered on September 24, 2015

*Ron O'Brien*, Prosecuting Attorney, and *Jesse W. Armstrong*, for appellee.

*Christopher J. Minnillo*, for appellant.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Defendant-appellant, Timothy P. Phillips, appeals a judgment of the Franklin County Court of Common Pleas that granted plaintiff-appellee, Ron O'Brien, the Franklin County prosecuting attorney, a permanent injunction requiring Phillips to vacate his residence. For the following reasons, we affirm that judgment.

{¶ 2} On November 13, 2012, Phillips pleaded guilty to attempted unlawful sexual conduct with a minor, a violation of R.C. 2923.02 as it relates to R.C. 2907.04. A month later, the trial court convicted and sentenced Phillips. Upon conviction, Phillips became a sexual offender subject to statutory registration and verification requirements, as well as residency restrictions.

{¶ 3} Phillips resides at 198 South Westmoor Avenue in Columbus, Ohio. Phillips purchased that property in May 2000, and he has lived there ever since. Phillips'

residence is located near Westgate Alternative Elementary School ("Westgate Alternative"), a Columbus public school.

{¶ 4} On September 18, 2013, the prosecuting attorney filed an action seeking a permanent injunction ordering Phillips to vacate his residence. The prosecuting attorney sued Phillips pursuant to R.C. 2950.034(B), which permits the prosecuting attorney to seek injunctive relief against any person who: (1) has been convicted of or pleaded guilty to a sexually oriented offense and (2) has established a residence or is occupying residential premises that is located within Franklin County and within 1,000 feet of the premises of a school, preschool, or daycare facility.

{¶ 5} Both the prosecuting attorney and Phillips moved for summary judgment. In an entry dated March 25, 2014, the trial court denied both motions, but specified the material facts not in controversy pursuant to Civ.R. 56(D). The trial court then held a trial on the sole remaining material fact, i.e., whether Phillips' residence was located within 1,000 feet of Westgate Alternative.

{¶ 6} During trial, the prosecuting attorney presented the testimony of Kevin Schultz, the interim director of the GIS-IT unit of the Franklin County Auditor's office. "GIS" stands for "geographic information system." Using the GIS tax map database, Schultz measured the distance between the boundary line of Phillips' property and the boundary line of Westgate Alternative's property. That distance is 735 feet, with a two-and-one-half-foot margin of error.

{¶ 7} On November 19, 2014, the trial court issued a judgment that granted a permanent injunction requiring Phillips to vacate his South Westmoor residence. The trial court also issued a decision, including findings of fact and conclusions of law, supporting its judgment. Phillips now appeals the November 19, 2014 judgment, and he assigns the following errors:

> [1.] It was error for the lower court to retroactively apply R.C. 2950.034 to the Appellant who had established his residence prior to the enactment date of the original section.
>
> [2.] The lower court's finding of fact number 20, that the parcel of real estate located at 3080 Wicklow Road, was a "school" as used in R.C. 2950.034 was clearly erroneous and contrary to the evidence. The state did not establish either by clear and convincing evidence or a preponderance of the evidence that the premises in question was a school operated by a board of education on the date of the trial.

[3.] It was error and abuse of discretion by the trial court to interrupt Mr. Phillips' direct examination with an unrelated question concerning the activities conducted at 3080 Wicklow Road.

[4.] The lower court erred in applying R.C. 2950.034 retroactively to the Appellant and thereby violated the Ex Post Facto Clause of the Federal Constitution which forbids the congress and the states to from [sic] enacting any law which imposes a punishment for an act which was not punishable at the time it was committed, or imposes additional punishment for an earlier act, in this case the Appellant's ability to occupy his home.

[5.] The trial court correctly found that clear and convincing evidence is required under R.C. 2950.034 to grant injunctive relief, and that a prerequisite to injunctive relief is a balancing of the equities involved, including the benefit of injunctive relief, the harm to the Appellant that would result from the requested injunctive relief and the harm to society. The trial court erred in finding that a balancing of equities was not required because of Appellant's willful conduct, which finding was against the manifest weight of the evidence. A proper balancing of the equities would not have resulted in the imposition of the injunction granted by the lower court.

{¶ 8} By Phillips' first assignment of error, he argues that the trial court erred in retroactively applying R.C. 2950.034 to him. Phillips contends that R.C. 2950.034 operates retroactively as to him because he purchased his residence in May 2000, which was prior to the enactment of residency restrictions on sexual offenders.

{¶ 9} R.C. 2950.034 traces its lineage to former R.C. 2950.031, which the General Assembly enacted as part of its 2003 amendments to R.C. Chapter 2950 (known as "Megan's Law"). Former R.C. 2950.031 imposed a residency restriction on certain sexually oriented offenders, prohibiting them from "establish[ing] a residence or occupy[ing] residential premises within one thousand feet of any school premises." Am.Sub.S.B. No. 5, 150 Ohio Laws, Part IV, 6558, 6657. In 2007, the General Assembly enacted Am.Sub.S.B. No. 10 ("S.B. 10"), Ohio's version of the federal Adam Walsh Child Protection and Safety Act. S.B. 10 amended former R.C. 2950.031 and recodified it as R.C. 2950.034. The amended statute, still effective today, reads in relevant part:

No person who has been convicted of, is convicted of, has pleaded guilty to, or pleads guilty to a sexually oriented

offense or a child-victim oriented offense shall establish a residence or occupy residential premises within one thousand feet of any school premises or preschool or child day-care center premises.

R.C. 2950.034(A).   Although S.B. 10 expanded the residency restriction to include preschools and daycare centers, it did not otherwise significantly alter the substance of former R.C. 2950.031.  *Franklin Cty. Pros. Atty. v. Smith*, 10th Dist. No. 10AP-52, 2010-Ohio-3748, ¶ 11.

{¶ 10} The Supreme Court of Ohio considered whether former R.C. 2950.031 applied retroactively in *Hyle v. Porter*, 117 Ohio St.3d 165, 2008-Ohio-542.  In that case, the defendant was convicted of a sexually oriented offense in 1995 and, again, in 1999. Following the enactment of former R.C. 2950.031, the chief legal officer of the township in which Porter lived sought to enjoin Porter from continuing to occupy his residence, which was within 1,000 feet of a school.  Porter argued that, as applied to him, former R.C. 2950.031 was unconstitutionally retroactive because he committed his offenses and purchased his home prior to the effective date of the statute.

{¶ 11} The Supreme Court began its analysis by reviewing the text of former R.C. 2950.031 to determine whether the statute clearly declared that it was to apply retroactively.  The court found that the language of former R.C. 2950.031 was "ambiguous regarding its prospective or retroactive application," which was "not sufficient to overcome the presumption of prospective application." *Hyle* at ¶ 13.  Thus, the court held that, "[b]ecause [former] R.C. 2950.031 was not expressly made retrospective, it [did] not apply to an offender who bought his home and committed his offense before the effective date of the statute." *Hyle* at syllabus.  In other words, because former R.C. 2950.031 only operated prospectively, it did not apply to a person "who, by virtue of past crime and residence, [was] violating the terms of the statute on the day it became effective." *Hope Academy v. Ohio Dept. of Edn.*, 10th Dist. No. 07AP-758, 2008-Ohio-4694, ¶ 20.

{¶ 12} Approximately three years after *Hyle*, the Supreme Court of Ohio determined that the entirety of S.B. 10, "as applied to defendants who committed sex offenses prior to its enactment, violates Section 28, Article II of the Ohio Constitution, which prohibits the General Assembly from passing retroactive laws." *State v. Williams*,

129 Ohio St.3d 344, 2011-Ohio-3374, syllabus.[1] As we explained above, R.C. 2950.034 was enacted as part of S.B. 10. Consequently, *Hyle* and *Williams*, together, stand for the proposition that the residency restrictions on sexual offenders only operate prospectively.

{¶ 13} In cases following *Hyle*, the question arose: under what circumstances is application of the residency restrictions retroactive and under what circumstances is it prospective? *Hyle* only addressed one scenario: the offender purchased his home and committed a sexually oriented offense prior to the effective date of the applicable residency restriction. Consequently, since the announcement of the *Hyle* decision, the courts of appeal have had to decide what other situations also entail a retroactive application of the residency restrictions.

{¶ 14} As a general matter, a statute operates retroactively when it "attaches new legal consequences to events completed before its enactment." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 270 (1994); *accord State v. Williams*, 103 Ohio St.3d 112, 2004-Ohio-4747, ¶ 7 ("A statute is retroactive if it penalizes conduct that occurred before its enactment."). A statute operates prospectively when it applies to and regulates conduct that occurs after its effective date. *Dukes v. Dir., Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 09AP-515, 2009-Ohio-6781, ¶ 14; *accord Hope Academy* at ¶ 20 ("Prospective application [means the statute does] not apply to things that occurred prior to the statute's effective date, as that would be a retroactive application.").

{¶ 15} Applying the foregoing, the residency restrictions operate retroactively as to a person who commits and is convicted of a sexually oriented offense *before* the effective date of the applicable residency restriction, but establishes a residence or occupies residential premises within the prohibited distance *after* the effective date. *State v. Benedetta*, 7th Dist. No. 12 BE 20, 2013-Ohio-4364, ¶ 18-22 (collecting cases).[2] In that

---

[1] Courts do not address the question of constitutional retroactivity unless they first determine that the General Assembly expressly made the statute at issue retroactive. *Id.* at ¶ 8. In *Hyle*, the court did not reach the constitutionality question because it concluded that the General Assembly did not expressly make former R.C. 2930.031 retroactive. In *Williams*, to pass beyond the first step of the retroactively test, the court examined another statute, R.C. 2950.03 (also part of S.B. 10), and determined that it expressly applied retroactively. *Williams* at ¶ 8. Thus, although *Williams* ultimately held that R.C. 2950.034 (as part of S.B. 10) was unconstitutional when applied retroactively, this holding does not diminish the analysis conducted or conclusions reached in *Hyle*.

[2] To further complicate matters, when a sex offender is living within a 1,000 feet of school premises, a court gauges retroactivity using the effective date of former R.C. 2950.031, which is July 31, 2003. *Smith*, 10th Dist. No. 10AP-52, 2010-Ohio-3748. If the case involves a preschool or daycare facility, the applicable date is July 1, 2007, the effective date of R.C. 2950.034, which added the preschool and daycare restrictions.

situation, a new legal consequence, i.e., forced relocation, attaches to prior events (commission and conviction of a sexually oriented offense), so the residency restrictions apply retroactively. On the other hand, residency restrictions operate prospectively as to a person who (1) commits and is convicted of a sexually oriented offense and (2) establishes a residence or occupies residential premises *after* the effective date of the applicable residency restriction. In that situation, R.C. 2950.034 operates prospectively because it regulates all post-enactment conduct.

{¶ 16} In the case at bar, Phillips established his residence prior to the applicable effective date (July 31, 2003). But all the other conduct implicated here—the commission of the offense, guilty plea, and occupation of residential premises within 1,000 feet of a school—occurred after July 31, 2003. Thus, the issue this case presents is whether R.C. 2950.034 operates retroactively when the sole pre-enactment event is the defendant's establishment of a residence.

{¶ 17} We have previously determined that residency restrictions do *not* apply retroactively to a defendant just because that defendant owned the home in which he resided prior to the applicable effective date. In *O'Brien v. Hill*, 197 Ohio App.3d 14, 2012-Ohio-774, ¶ 20-21 (10th Dist.), we stated:

> The scenario that this case presents is one that has arisen *subsequent* to the enactment of the residency restrictions that are sought to be applied to appellee. While appellee may have purchased his home in 1991, the prohibited act, i.e., being a sexual offender and residing within 1,000 feet of a school, did not arise until the latter half of 2006. The prohibited act is not simply establishing a residence or occupying residential premises, but doing so as a sexual offender and within 1,000 feet of a school. This circumstance arose in 2006, which is subsequent to the time the residency restrictions went into effect on July 31, 2003. Thus, we cannot conclude that the residency restrictions of R.C. 2950.034 are being applied retrospectively or, put another way, to facts that arose prior to their existence.
>
> Furthermore, while it is the conviction of a sexually oriented offense that triggers the application of the residency restrictions, they could not exist without the underlying offense. The residency restrictions are not punishing past conduct if the offense occurred after the residency restrictions' enactment. Application of R.C. 2950.034 to a person who commits a sexually oriented offense after the residency restrictions' effective date, while taking away one's choice of

> where to live, is doing so prospectively, much like a person's liberty may be taken away for a statutorily proscribed period of time after one is convicted of an offense.

(Emphasis sic.)

{¶ 18} Merely establishing a residence within 1,000 feet of a school does not violate R.C. 2950.034(A) and result in forced relocation pursuant to R.C. 2950.034(B). Only further, additional events can trigger R.C. 2950.034. In the instant case, those triggering events were Phillips' commission of a sexually oriented offense, which occurred in 2011 through 2012; Phillips' guilty plea to a sexually oriented offense, which occurred in 2012; and Phillips' occupation of his residence, which occurs currently. Because those events all occurred after July 31, 2003, R.C. 2950.034 operates prospectively as to Phillips.

{¶ 19} This conclusion does not end our analysis. Although Phillips' first assignment of error challenges the alleged retroactive application of R.C. 2950.034, his argument largely concentrates, instead, on contesting the meaning of R.C. 2950.034. Phillips argues that the phrase "occupy residential premises," as used in R.C. 2950.034, means to *commence* occupation of residential premises after the effective date of the applicable residency restriction. Phillips purchased his home and commenced living in it in May 2000—well before the July 31, 2003 effective date of former R.C. 2950.031. Phillips argues that the residency restrictions do not apply to him because he continued—and did not commence—occupation of his home after the effective date. Phillips directs us to *Hyle* for support for his interpretation of R.C. 2950.034.[3]

{¶ 20} In *Hyle*, the Attorney General of Ohio, an amicus curiae, asserted that the verb "occupy" had to mean "continue to occupy," or the phrases "shall establish a residence" and "occupy residential premises" were redundant.[4] Based upon this reading of the statute, the attorney general argued that the residency restriction applied to offenders who purchased their homes prior to the effective date of the statute and

---

[3] At various points in his brief, Phillips argues that R.C. 2950.034 does not apply to a defendant who commences occupation of residential premises *before a conviction or guilty plea to a sexually oriented offense*. Retroactivity, the concept Phillips relies upon for his argument, is concerned with the application of statutes to events that occurred *before the statutes became law*. As focusing on the date of conviction or plea divorces Phillips' argument from all legal support, we will presume that Phillips meant, instead, to focus on the effective date of the residency restrictions.

[4] As Phillips points out, a person cannot establish a residence without occupying that residence. Presumably, the attorney general based his redundancy argument on that fact.

continued to occupy them after, as well as offenders who purchased and began living in their homes (i.e., established a residence) after the effective date. *Hyle*, 117 Ohio St.3d 165, 2008-Ohio-542, at ¶ 12. Since the statute would apply to both type of offenders, the argument posited, the statute was meant to apply retroactively.

{¶ 21} The Supreme Court rejected this argument, finding no clear indication in the statutory language that the residency restriction was to have retroactive application. The Supreme Court stated:

> [T]he two verbs in the description of prohibited acts could reasonably denote two distinct, present-tense meanings. For example, "establish a residence" could mean "purchase and occupy a permanent home," and "occupy a residence" could mean "live in a temporary residence or occupy another's home." The language cited is therefore not a clear declaration of retroactivity.

*Id.* at ¶ 22.

{¶ 22} Notably, the Supreme Court only examined the phrase "occupy residential premises" in order to determine whether it clearly indicated the General Assembly's intent to apply the residency restriction retroactively. The Supreme Court did not opine on the definitive meaning of the phrase "occupy," so it did not endorse or reject "commence to occupy" or "continue to occupy" as the definition of "occupy."

{¶ 23} Putting *Hyle* aside, the argument that Phillips presents devolves to a question of normal statutory interpretation, which is separate from a retroactivity analysis. When construing a statute, courts first examine the plain language of the statute and apply it as written when the meaning is clear and unambiguous. *MedCorp, Inc. v. Ohio Dept. of Job & Family Servs.*, 121 Ohio St.3d 622, 2009-Ohio-2058, ¶ 9. Courts afford the words used in the statute their usual, normal, and/or customary meanings. *Id.*

{¶ 24} To "occupy" means "to reside in as an owner or tenant" or "to hold possession of." *Webster's Third New Internatl. Dictionary* (1986) 1561. Of course, for purposes of maintaining prospective application, a sex offender must "reside in" or "hold possession of" the residential premises at some point after the effective date of the applicable residency restriction. However, determination of whether a sex offender resides in or holds possession of residential premises does not require ascertainment of the date on which an offender began to "reside in" or "hold possession of" the residential premises. Whether occupancy commences or continues after the effective date of the

applicable residency requirement, it remains occupancy, and occupancy is all that the statute requires. Thus, neither "commence" nor "continue" modifies the phrase "occupy residential premises."

{¶ 25} We are not persuaded by Phillips' argument that "occupy" must mean "commence to occupy" or the phrase "establish a residence" becomes redundant. As the Supreme Court pointed out, "establish a residence" could mean "purchase and occupy a permanent home," and "occupy residential premises" could mean "live in a temporary residence or occupy another's home." *Hyle* at ¶ 22. We are also unconvinced that the heading of R.C. 2950.034, "Prohibiting offender from establishing residence near school," has any bearing on the meaning of the phrase "occupy residential premises." *Cosgrove v. Williamsburg of Cincinnati Mgt. Co.*, 70 Ohio St.3d 281, 284 (1994) (holding headings "are irrelevant to the substance of a code provision").

{¶ 26} Here, Phillips currently resides in and holds possession of the South Westmoor house, so he "occup[ies] residential premises" as required by R.C. 2950.034. Because Phillips committed and pleaded guilty to a sexually oriented offense and occupied residential premises within 1,000 feet of school after the effective date of the applicable residency restriction, the operation of the residency restriction as to him is prospective. We thus reject all the arguments Phillips asserts under his first assignment of error, and we overrule that assignment of error.

{¶ 27} We will next address Phillips' third assignment of error, by which he argues that the trial court erred in asking him, during trial, whether Westgate Alternative was an active school. We disagree.

{¶ 28} During a pause in Phillips' attorney's direct examination of Phillips, the trial judge asked him, "Do you know, Mr. Phillips, is Westgate Alternative currently used as an active school with kids coming in day in and day out?" (Tr. 65.) Phillips answered, "Yes, it is." (Tr. 65.) Phillips' attorney objected to the court's question.

{¶ 29} A trial court "may interrogate witnesses, in an impartial manner, whether called by itself or by a party." Evid.R. 614(B). " 'In the absence any showing of bias, prejudice, or prodding of a witness to elicit partisan testimony, it will be presumed that the trial court acted with impartiality [in propounding to the witness questions from the bench] in attempting to ascertain a material fact or to develop the truth.' " *State v. Baston*, 85 Ohio St.3d 418, 426 (1999), quoting *Jenkins v. Clark*, 7 Ohio App.3d 93, 98

(2d Dist.1982). A trial court's questioning of a witness is not partial merely because it elicits testimony that is damaging to one of the parties. *Brothers v. Morrone-O'Keefe Dev. Co., LLC*, 10th Dist. No. 05AP-161, 2006-Ohio-1160, ¶ 12. Moreover, questions posed for the purpose of clarifying material facts do not qualify as improper examination. *State v. King*, 2d Dist. No. 24141, 2011-Ohio-3417, ¶ 13. Because a trial court has the discretion to question witnesses, appellate courts review the court's questioning under the abuse of discretion standard. *Brothers* at ¶ 10.

{¶ 30} Here, Phillips only challenges the trial court's question because it established a fact favorable to the prosecuting attorney. That is not a basis on which to find partiality. Accordingly, we overrule Phillips' third assignment of error.

{¶ 31} We now return to Phillips' second assignment of error, by which he argues that the trial court erred in finding that Westgate Alternative satisfies the statutory definition of "school." We disagree.

{¶ 32} R.C. 2950.034(A) prohibits sex offenders from establishing a residence or occupying residential premises within 1,000 feet of "any school premises." As used in R.C. 2950.034, "school" and "school premises" have the same meanings as in R.C. 2925.01. R.C. 2950.01(S). Pursuant to R.C. 2925.01(Q), the definition of "school" includes "any school operated by a board of education." "School premises" is defined to include "[t]he parcel of real property on which any school is situated." R.C. 2925.01(R)(1).

{¶ 33} Here, Phillips complains that the prosecuting attorney did not present evidence regarding whether Westgate Alternative qualified as a "school" under R.C. 2925.01(Q). However, the prosecuting attorney did not have to present such evidence; Westgate Alternative's status as a school was established on summary judgment.

{¶ 34} Civ.R. 56(D) states:

> If on motion under this rule summary judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court in deciding the motion, shall examine the evidence or stipulation properly before it, and shall if practicable, ascertain what material facts exist without controversy and what material facts are actually and in good faith controverted. The court shall thereupon make an order on its journal specifying the facts that are without controversy * * * and directing such further proceedings in the action as are just. Upon the trial of the action the facts so specified shall be deemed established, and the trial shall be conducted accordingly.

Under this provision, a trial court may issue a summary judgment decision that sets forth the uncontroverted material facts, thus narrowing the factual issues to be decided at trial. *Thornton v. Premium Glass Co.*, 5th Dist. No. 09-CA-52, 2010-Ohio-1796, ¶ 19; *Thrash v. Motorists Mut. Ins. Co.*, 2d Dist. No. 19504, 2003-Ohio-1765, ¶ 24. If a trial court designates a material fact as uncontroverted, that fact is deemed established and may not be contested at trial. *Zink v. Harrison*, 2d Dist. No. 12201 (July 16, 1992); *accord Kent v. Columbus*, 10th Dist. No. 96AP-1771 (Aug. 12, 1997) (holding that the appellant was precluded from admitting evidence at trial to controvert the factual issues determined under Civ.R. 56(D)).

{¶ 35} Here, the prosecuting attorney appended to his summary judgment motion the affidavit of Anne Dorrian-Lenzotti, the director of real estate and shared facilities for the Columbus City Schools. Dorrian-Lenzotti stated in her affidavit that Westgate Alternative is a Columbus public school. Phillips did not dispute Dorrian-Lenzotti's testimony. Rather, he conceded in his memorandum contra that "Westgate Alternative Elementary School is a school operated by the Board of Education – Columbus City Schools." (R. 15, at 2.)

{¶ 36} The trial court denied both parties' motions for summary judgment, but it recognized that the parties agreed on many material facts. Consequently, in its summary judgment ruling, the trial court invoked Civ.R. 56(D) and set forth the undisputed material facts. One of the facts was that "Westgate Alternative is currently an operating public school being used by Columbus students." (R. 24, at 2.) Because that material fact was established in the summary judgment decision, the prosecuting attorney did not need to present evidence to prove it at trial.

{¶ 37} In his appellate reply brief, Phillips argues that the finding that Westgate Alternative constituted a school was stale by trial. According to Phillips, Dorrian-Lenzotti's affidavit testimony only established that Westgate Alternative operated as a Columbus public school during the 2013-2014 school year. Phillips maintains that the prosecuting attorney had to prove at trial that Westgate Alternative remained a school for the 2014-2015 school year.

{¶ 38} We find that, to properly raise this argument, Phillips had to assert it before trial to give the prosecuting attorney notice that he was challenging an established fact. If Phillips had raised the argument prior to trial and the trial court had ruled in his favor,

then the prosecuting attorney would have had the opportunity to adduce evidence at trial to prove that Westgate Alternative was still a school.  Because Phillips did not assert the argument prior to trial, the prosecuting attorney could rely on established fact and refrain from adducing that evidence.  *See Alberty-Velez v. Corporacion de Puerto Rico Para la Difusion Publica*, 242 F.3d 418, 424-25 (1st Cir.2001) (once the trial court establishes uncontroverted facts on summary judgment, the parties have a right to rely on that ruling by forbearing from introducing any evidence or cross-examining witnesses in regard to those facts); *accord Singh v. George Washington School of Med. & Health*, 508 F.3d 1097, 1106 (D.C.Cir.2007) ("[The appellant] neither moved in the district court to vacate the partial summary judgment, * * * nor otherwise gave effective notice that it sought to disestablish the prior finding.  A trial court's reopening of such an issue without notice to the parties is error, and reversible error if it causes substantial prejudice.").[5]

{¶ 39} Additionally, Phillips' argument fails because the trial record contains evidence that Westgate Alternative remained a school through the 2014-2015 school year. As we stated above, Phillips answered affirmatively when the trial judge asked him if Westgate Alternative was an active school.

{¶ 40} Based on the trial court's specification of facts pursuant to Civ.R. 56(D) and Phillips' testimony, we conclude that the record establishes that Westgate Alternative fits within the R.C. 2925.01(Q) definition of "school."  Accordingly, we overrule Phillips' second assignment of error.

{¶ 41} By his fourth assignment of error, Phillips argues that application of R.C. 2950.034 to him violates the Ex Post Facto Clause of the United States Constitution.  We disagree.

{¶ 42} Phillips did not assert this argument in the trial court.  Instead, Phillips contended below that application of R.C. 2950.034 to him was retroactive in violation of Ohio Constitution, Article II, Section 28, and amounted to an unconstitutional taking of his property.  Neither of these arguments implicates the Ex Post Facto Clause.

---

[5] Both of the cited cases applied Fed.R.Civ.P. 56(d)(1) as it existed prior to the 2009 amendments to Fed.R.Civ.P. 56.  There are substantial similarities between former Fed.R.Civ.P. 56(d)(1) and Civ.R. 56(D).  We cite to the federal case law interpreting former Fed.R.Civ.P. 56(d)(1) because we find it instructive in interpreting Civ.R. 56(D).  *See Myers v. Toledo*, 110 Ohio St.3d 218, 2006-Ohio-4353, ¶ 18 (when the language of a federal rule of civil procedure tracks the language of an Ohio rule of civil procedure, case law interpreting the federal rule is persuasive authority).

{¶ 43} Failure to raise in the trial court the issue of the constitutionality of a statute or its application, when the issue was apparent at the time of trial, constitutes a waiver of the issue. *State v. Awan*, 22 Ohio St.3d 120 (1986), syllabus; *accord State v. Pigot*, 10th Dist. No. 06AP-343, 2007-Ohio-141, ¶ 6 (holding that the appellant waived the argument that the trial court subjected him to an ex post facto law when he did not raise that argument before the trial court). Such waived issues need not be heard for the first time on appeal. *Awan* at syllabus. Since Phillips did not raise his ex post facto argument in the trial court, he waived it, and we need not address it.

{¶ 44} Notwithstanding Phillips' waiver, we find the ex post facto argument unpersuasive. "The *ex post facto* prohibition forbids the Congress and the States to enact any law 'which imposes a punishment for an act which was not punishable at the time it was committed; or imposes additional punishment to that then prescribed.' " *Weaver v. Graham*, 450 U.S. 24, 28 (1981), quoting *Cummings v. Missouri*, 71 U.S. 277, 325-26 (1866). In order for a statute to violate the Ex Post Facto Clause, "it must be retrospective, that is, it must apply to events occurring before its enactment." *Weaver* at 29. As we concluded above, R.C. 2950.034 does not apply retrospectively to Phillips. Consequently, no violation of the Ex Post Facto Clause has occurred. We thus overrule Phillips' fourth assignment of error.

{¶ 45} By Phillips' fifth assignment of error, he argues that the trial court erred in finding that his willful violation of the residency restrictions relieved the court of the obligation to balance the equities involved before granting an injunction. We conclude that this argument is not a sufficient basis on which to reverse the trial court's judgment.

{¶ 46} Traditionally, a permanent injunction provides equitable relief upon a showing of immediate and irreparable injury to the complaining party and the lack of an adequate remedy at law. *Franklin Cty. Dist. Bd. of Health v. Paxson*, 152 Ohio App.3d 193, 2003-Ohio-1331, ¶ 25 (10th Dist.). In determining whether to grant such an injunction, a court must engage in "a balancing process designed to weigh the equities between the parties." *Id.*

{¶ 47} Here, the trial court concluded that it did not have to weigh the equities involved for two reasons: (1) Phillips' violation of the residency restrictions was willful and (2) the prosecuting attorney sought an injunction as a statutory—not equitable— remedy, and no balancing of equities is necessary before the grant of a statutory

injunction; such injunctions issue upon a showing of the statutory requirements. To secure a reversal on the basis that the court erred in deciding that it did not have to weigh the equities, Phillips has to negate both reasons underlying that decision. However, in his assignment of error, Phillips does not contest the second reason the trial court offered for refusing to weigh the equities. Consequently, even if the first reason constitutes error, the trial court's decision remains supported by the second reason. Because the second reason stands unchallenged, we cannot find error in the trial court's decision to not weigh the equities. Accordingly, we overrule Phillips' fifth assignment of error.

{¶ 48} For the foregoing reasons, we overrule each of Phillips' five assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, P.J., and HORTON, J., concur.

———————————